# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

C.W., *et al.*,

                Plaintiffs,

    vs.

NEVADA DEPARTMENT OF
EDUCATION, *et al.*,

                Defendants.

Case No.: 2:24-cv-01800-GMN-DJA

**ORDER DENYING MOTIONS TO
DISMISS**

Pending before the Court is the Motion to Dismiss, (ECF No. 32), filed by Defendant Clark County School District ("CCSD"). Plaintiffs C.W., *et al.*, filed a Response, (ECF No. 44), to which CCSD did not file a Reply. Also pending before the Court is CCSD's Motion to Strike, (ECF No. 33), to which Plaintiffs filed a Response, (ECF No. 45), and CCSD did not file a Reply.

Further pending before the Court is the Motion to Dismiss, (ECF No. 45), filed by Nevada Department of Education ("NDE"), and Nevada Superintendent of Public Instruction Jhone M. Ebert (collectively "State Defendants"). Plaintiffs filed a Response, (ECF No. 52), to which NDE filed a Reply, (ECF No. 53).[1]

For the reasons discussed below, the Court **DENIES** CCSD's Motion to Dismiss and Motion to Strike. The Court also **DENIES** the State Defendant's Motion to Dismiss and **DENIES** the State Defendant's Motion to Strike as moot.

---

[1] Also pending before the Court is NDE's Motion to Strike Portions of Plaintiffs' Response to its Motion to Stay Discovery, (ECF No. 56). Because Magistrate Judge Albregts has now addressed the Motion to Stay Discovery, (ECF No. 71), the Motion to Strike, (ECF No. 56), is DENIED as moot.

## I.    **FACTUAL BACKGROUND**

This case arises out of CCSD and NDE's alleged failure to educate students with disabilities. (*See generally* First Am. Compl. ("FAC"), ECF No. 30).  Named Plaintiffs are parents of students who have disabilities and the Council of Parent Attorneys and Advocates (COPAA), an organization bringing this suit on behalf of its members. (*Id.* ¶ 8).  Plaintiffs bring this case against CCSD, NDE, and State Superintendent of Public Instruction Johne M. Ebert on behalf of themselves and others similarly situated, seeking to remedy the district's systemic failure to comply with federal disability discrimination laws. (*Id.* ¶ 3).

Plaintiffs allege that CCSD, the fifth largest school district in the country, maintains district-wide policies that systematically deny the over 40,000 students with disabilities their right to a free and appropriate public education under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400, *et seq.* (*Id.* ¶ 2, 3).  They also assert that these policies discriminate against students in violation of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 and Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131 *et seq.* (*Id.* ¶ 3).

Specifically, Plaintiffs point to a 2019 CCSD commissioned review of its special education services performed by the Council of Great City Schools (the "CGCS Review") as the identifier of many systemic deficiencies in the district's special education services. (*Id.* ¶ 53).  The CGCS Review found that CCSD does not have a professional development program, has significant staffing vacancies in almost all staffing areas, and lacks a clear monitoring or accountability system for special education. (*Id.* ¶ 53(a)).  Further, it identified that students with disabilities were educated in general education classes at a much lower than average rate, were more likely to be isolated and be suspended out-of-school than students without individualized education programs ("IEPs"), and that "the system exceeded the federal 1 percent threshold for alternative testing." (*Id.* ¶ 53(b)).  The Review further recognized

several other specific concerns regarding the district's programs, including the lack of "any districtwide-sponsored interventions that would ensure all students have access to the research-based instruction necessary to meet their needs." (*Id.* ¶ 53).

Plaintiffs allege that CCSD maintains policies and practices that purposely interfere with the location and identification of students who need special education services under IDEA. (*Id.* ¶ 54). For example, at annual training sessions, Plaintiffs state that CCSD specifically instructs general education teachers not to tell parents that their children may need evaluation for special education services in violation of IDEA's "child find" requirement. (*Id.*).

They further assert that CCSD fails to provide reasonable accommodations for students with dyslexia and maintains a district-wide policy of denying reasonable accommodations to students with dyslexia. (*Id.* ¶ 55). CCSD allegedly failed to provide trained literacy specialists, assessments, or instructional practices that align with the state's guidelines for dyslexia. (*Id.*). Plaintiffs also allege that CCSD fails to provide reasonable accommodations for students with behavioral management needs and autism, (*id.* ¶ 56), have a policy of not providing research-based behavioral supports, (*id.* ¶ 57), and fail to provide appropriate supports to ensure that children are educated in the Least Restrictive Environment ("LRE"), (*id.* ¶ 58).

Plaintiffs identify CCSD's policy of ignoring staffing shortages, using long-term substitutes, non-certified staff, and non-certified paraprofessionals to provide services to students with disabilities. (*Id.* 59). They describe the district's policy of removing staff from classrooms and leaving special education students without sufficient support. (*Id.* ¶ 60–63). And they assert that the shortage of appropriately trained teachers has led to increased incidents of abuse of special education students. (*Id.* ¶ 64).

Beyond these system-wide allegations, the FAC includes specific allegations about each of the twelve individual named plaintiffs. (*Id.* ¶¶ 69–111). Eleven named Plaintiffs are current students at CCSD schools of all levels. (*Id.* ¶¶ 13–23). The twelfth is a student who attends a

private school at her parents' expense. (*Id.* ¶ 24). The twelve students have been diagnosed with a range of disabilities, and for each named Plaintiff, the FAC details examples of how CCSD violated their rights under the IDEA, Title II, and Section 504. (*Id.* ¶¶ 69–111). The allegations as to each child generally fall into the following categories: (1) failure to identify and evaluate students with disabilities as required by the "child find" mandate, (2) failure to develop, review, and revise adequate IEPs, (3) failure to implement IEPs as written, (4) denial of parental participation as required by the IDEA, (5) failure to provide procedural safeguards such as prior written notice and the right to an impartial due process hearing, (6) imposition of inappropriate disciplinary actions cause by the failure to conduct manifestation determination reviews, (7) failure to provide transition services in IEPs for students aged 16 and older, (8) failure to provide appropriate special education and related services and supplementary aids and services in IEPS, and (9) failure to consider special factors, as required by the IDEA. (*Id.* ¶ 66).

Plaintiff L.W. is eleven years old and has diagnoses of Attention Deficit Hyperactivity Disorder ("ADHD"), dyslexia, dysgraphia, and suspected dyscalculia. (*Id.* ¶ 69). During L.W.'s first five years in CCSD, Plaintiffs allege that CCSD failed to deliver a FAPE[2], with CCSD personnel admitting that they did not have the resources to provide him the services he needs. (*Id.* ¶ 70). CCSD allegedly denied L.W. a FAPE and discriminated against him by: providing inadequate instruction, failing to identify him as IDEA-eligible, providing inappropriate implementation of his IEP and inappropriate interventions, and delaying response to parental requests for changes to his IEP. (*Id.*). This school year, Plaintiffs contend that CCSD staff are demonstrating a lack of knowledge of his IEP, failing to provide appropriate research-based interventions for dyslexia due to insufficiently trained personnel, failing to

---

[2] "FAPE" refers to a "free appropriate public education" for children with certain disabilities. 20 U.S.C. § 1412(a)(1)(A).

implement his IEP appropriately, causing L.W. to lose instructional time, and refusing to address issues at his IEP meetings. (*Id.* ¶ 71).

T.L. is eight years old and has Autism Spectrum Disorder. (*Id.* ¶ 72). He is currently placed in an intermediate autism classroom. (*Id.*). He will repeat what someone says to him but cannot tell his mother what has happened to him at school. (*Id.*). During the 2023–24 school year, he was allegedly placed in an autism classroom that was not adequately staffed to meet the needs of the students with a teacher that did not have the training to instruct children with autism. (*Id.* ¶ 73). Plaintiffs allege that CCSD failed to provide research-based interventions to address behaviors related to T.L.'s autism, allowed him to leave school without supervision several times per week, and failed to review and revise his IEP despite its manifest inappropriateness. (*Id.*).

C.R. is seventeen years old, has Usher syndrome resulting in Deafness and visual impairment, Autism Spectrum Disorder, Intellectual Disability, ADHD, Tourette syndrome, and Disruptive Mood Disorder. (*Id.* ¶ 75). He is placed in a self-contained classroom at Rancho High School. (*Id.*). C.R. has limited communication abilities, with some use of sign language, and cannot always tell his mother what has happened to him at school. (*Id.*). Plaintiffs allege that CCSD failed to follow the appropriate process for addressing C.R.'s behavioral concerns: rather than evaluating him with a Functional Behavioral Assessment and providing a Behavior Intervention Plan, CCSD repeatedly punished C.R. for behaviors related to his disability including by sending him to juvenile detention. (*Id.* ¶ 76). CCSD also allegedly failed to provide and then unreasonably delayed the provision of assistive technology to address C.R.'s communication needs. (*Id*). Plaintiffs further allege that, because CCSD has never completed any transition assessment for C.R., he is not receiving appropriate transition services as required by the IDEA. (*Id.*). Lastly, CCSD allegedly placed C.R. in a dangerous situation when school police dropped him off at an address where he no longer lived, and he was unable to

communicate to get help. (*Id.*).  Eventually, his mother M.R. found C.R. at a convenience store that was twelve miles from their home and four miles from the address where the school police had left him. (*Id.*).

C.L. is six years old and has Autism Spectrum Disorder, and he is currently placed in a primary autism classroom for the entire day. (*Id.* ¶ 77).  CCSD allegedly violated C.L.'s rights by failing to provide appropriate behavioral supports, resulting in physical assault by his classmates and significant regression in C.L.'s behavior. (*Id.*).  Plaintiffs also claim that CCSD failed to implement C.L.'s IEP, provide effective research-based interventions, and ensure meaningful parental participation. (*Id.* ¶ 78).

F.U. is twelve years old and has a diagnosis of Autism Spectrum Disorder.  His current IEP places him in general education for the entire school day. (*Id.* ¶ 80).  During his time in elementary school, CCSD allegedly placed F.U. in a highly inappropriate Specific Learning Disability classroom, refused to allow his mother to participate meaningfully in his education program, failed to appropriately evaluate him, did not ensure access to the LRE, and delivered ineffective responses to known bullying incidents. (*Id.* ¶ 81).  In this current placement, Plaintiffs allege that CCSD provided no support for F.U.'s transition to a new school, and school personnel are failing to communicate with F.U.'s mother about his needs. (*Id.* ¶ 82).

G.U., F.U.'s sister, is ten years old and has diagnoses of comprehensive language disorder and unspecified anxiety disorder. (*Id.* ¶ 83).  She attends a resource room for math and her IEP indicates that she is currently placed in general education for 80–100% of the school day. (*Id.*).  Plaintiffs assert that CCSD has denied G.U. a FAPE and discriminated against her by placing her inappropriately and denying her mother the right to meaningful participation. (*Id.* ¶ 84).  They further allege that CCSD is not implementing G.U.'s IEP, addressing G.U.'s identified needs, providing materials in a format G.U. can access, and addressing and notifying her mother of poor performance in school. (*Id.*).

H.P. is six years old and has Autism Spectrum Disorder. (*Id.* ¶ 85). She is currently placed in a primary autism classroom and receives services in the general education classroom for thirty minutes in the morning and thirty minutes in the afternoon. (*Id.*). Last school year, Plaintiffs allege that CCSD did not administer an appropriate Functional Behavioral Assessment and Behavior Intervention Plan, resulting in a Behavioral Intervention Plan that exacerbated H.P.'s behaviors instead of mitigating them. (*Id.* ¶ 86). The district has allegedly failed to implement all components of H.P.'s IEP, has made placement decisions without basing them on H.P.'s IEP, excluded parental participation in educational decisions, violated the LRE requirements, failed to provide necessary evaluations, and provided insufficient supports in general education. (*Id.*).

K.S. is six years old and has a debilitating anxiety disorder and panic disorder. (*Id.* ¶ 88). CCSD allegedly failed to evaluate K.S. for IDEA or Section 504 eligibility, provided inappropriate 504 plans without conducting an evaluation, denied her parents the right to meaningful participation, and retaliated against her parents. (*Id.* ¶ 89).

M.S. is nine years old, has dyslexia and colorblindness, and is currently placed in general education for all but the 35 minutes a day he spends in a resource room. (*Id.* ¶ 91). Plaintiffs allege that CCSD has failed to deliver a FAPE and has discriminated against M.S. by failing to identify him as eligible for special education, denied his parents their participation rights, provided inappropriate programming resulting in school refusal, and retaliated against his mother. (*Id.* ¶ 92).

L.B. is nine years old, is diagnosed with Autism Spectrum Disorder, and is currently placed in a primary autism classroom. (*Id.* ¶ 95). CCSD allegedly placed L.B. inappropriately, pairing him with students well below his skill level, resulting in behavioral changes. (*Id.*). The district did not complete a Functional Behavioral Assessment or a Behavioral Intervention Plan to address these behaviors and refused parental requests to move L.B. to a more appropriate

setting. (*Id.*).  Plaintiffs assert that CCSD has denied L.B.'s mother her right to meaningfully participate in the educational process and denied parental requests for services that would facilitate education in the LRE. (*Id.*).

E.T. is fifteen years old and has Autism Spectrum Disorder, Disruptive Mood Disorder, ADHD, and Depression. (*Id.* ¶ 97).  Plaintiffs allege that CCSD violated its child find duty with regards to E.T., failed to provide appropriate research-based behavioral supports, and unlawfully restrained him. (*Id.* ¶ 98).

Z.A. is fourteen years old and has dyslexia, dysgraphia, dyscalculia, ADHD, and anxiety. (*Id.* ¶ 100).  Because CCSD allegedly failed to provide appropriate educational programming, Z.A. now attends a private school at her parents' expense. (*Id.*).  Plaintiffs state that CCSD failed to perform a timely evaluation of Z.A., resulting in a delayed diagnosis of her learning disabilities, and that the District refused her parent's requests for research-based interventions. (*Id.* ¶¶ 101–107).  Z.A.'s parents secured tutoring outside of school while she was enrolled at the CCSD school, and after fifth grade, they enrolled her in a private school partly because the district could not meet her educational needs. (*Id.* ¶ 108).  CCSD allegedly violated Z.A.'s rights by failing to provide appropriate research-based interventions, identify Z.A. as a child in need of special education, and ensure meaningful parental participation. (*Id.* ¶ 111).

Plaintiffs bring claims under the IDEA, Title II of the ADA, and Section 504 of the Rehabilitation Act, seeking declaratory and injunctive relief. (*Id.* ¶¶ 126–50).  They concede that they have not exhausted administrative remedies under the IDEA. (*Id.* ¶ 11, 12).  Plaintiffs ask the Court to order NDE and Dr. Johne Ebert to develop, adopt, and implement policies and practices that will ensure that the State of Nevada and CCSD comply with the law, and they seek a Court-appointed Monitor to oversee Defendants' development and adoption of these policies. (*Id.* 58:24–59:35).  CCSD and the State Defendants filed the instant Motions to

Dismiss and Motion to strike, seeking dismissal of all claims and striking of all class allegations. (*See generally* Mots. Dismiss).

## II. LEGAL BACKGROUND

"Multiple federal laws afford 'diverse' (and occasionally overlapping) protections for children with disabilities in public schools." *A.J.T. ex rel. A.T. v. Osseo Area Sch., Indep. Sch. Dist. No. 279*, 605 U.S. 335, 339 (2025). Plaintiffs bring claims under three overlapping pieces of federal legislation: The IDEA, 20 U.S.C § 1400 *et seq.*, Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, and Title II of the ADA, 42 U.S.C. § 12131 *et seq.*.

Both Section 504 and Title II prohibit discrimination on the basis of disability in a wide variety of contexts. *A.J.T.*, 605 U.S. at 339. Section 504 provides: "No otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). Title II of the ADA provides: "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Both Section 504 and Title II "authorize individuals to seek redress for violations of their substantive guarantees by bringing suits for injunctive relief or money damages." *Fry v. Napoleon Cmty. Sch.*, 580 U.S. 154, 160 (2017).

On top of these generally applicable antidiscrimination laws, the IDEA offers federal funds to states in exchange for a commitment to provide a "free appropriate public education" ("FAPE") to children with certain disabilities. 20 U.S.C. § 1412(a)(1)(A). Once a State accepts the IDEA's financial assistance, it must provide "'special education and related services,'" including "'instruction' tailored to meet a child's 'unique needs' and sufficient 'support

services' to permit the child to benefit from that instruction." *Id.*, at 158 (quoting §§ 1401(9), (26), (29)).

The IDEA's "primary vehicle" for providing each child with the promised FAPE is the IEP. *Id.* (quoting *Honig v. Doe*, 484 U.S. 305, 311 (1988). It is developed through a collaborative process between the child's parents, teachers, and school officials. *See id.* But because parents and school representatives sometimes cannot agree on all aspects of an IEP, the IEP establishes formal procedures for resolving disputes, starting with administrative review in a local or state educational agency, followed by the availability of judicial review in state or federal court." *A.J.T.*, 605 U.S. at 340 (quoting *Fry*, 580 U.S. at 158) (citation modified).

## III.  LEGAL STANDARD

### A.  Motion to Dismiss for Lack of Subject Matter Jurisdiction

A defendant may move to dismiss an action for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).  A Rule 12(b)(1) motion tests whether a complaint alleges grounds for federal subject matter jurisdiction.  A motion to dismiss for lack of subject matter jurisdiction will be granted if the complaint on its face fails to allege facts sufficient to establish subject matter jurisdiction. *See Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003).  Once a party has moved to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the opposing party bears the burden of establishing the court's jurisdiction. *See Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010).

### B.  Motion to Dismiss for Failure to State a Claim

Dismissal is appropriate under Rule 12(b)(6) where a pleader fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  A pleading must give fair notice of a legally cognizable claim and the grounds on which it rests, and although a court must take all factual allegations as true, legal conclusions

couched as factual allegations are insufficient. *Twombly*, 550 U.S. at 555.  Accordingly, Rule 12(b)(6) requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.*  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  This standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

If the court grants a motion to dismiss for failure to state a claim, leave to amend should be granted unless it is clear that the deficiencies of the complaint cannot be cured by amendment. *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992).  Pursuant to Rule 15(a), the court should "freely" give leave to amend "when justice so requires," and in the absence of a reason such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

**C. Motion to Strike**

While permissible, motions to strike are generally disfavored. *Bureerong v. Uvawas*, 922 F. Supp. 1450, 1478 (C.D. Cal. 1996).  Nonetheless, Federal Rule of Civil Procedure 12(f) provides that the court "may order stricken from any pleading . . . any redundant, immaterial, impertinent or scandalous matter." Fed. R. Civ. P. 12(f).  A matter will not be stricken from a pleading unless it is clear that it can have no possible bearing upon the subject matter of the litigation. *LeDuc v. Kentucky Cent. Life Ins. Co.*, 814 F. Supp. 820, 830 (N.D. Cal. 1992).  Moreover, when considering a motion to strike, courts must view the pleading in the light most

favorable to the pleader. *RDF Media Ltd. v. Fox Broad. Co.*, 372 F. Supp. 2d 556, 561 (C.D. Cal. 2005).

### D. Motion for More Definite Statement

"A party may move for a more definite statement of a pleading . . . which is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). An order granting the motion is appropriate when the responding party cannot ascertain the substance of the asserted claim. *Buckley v. Cnty. of San Mateo*, No. 14-cv-05488, 2015 WL 5769616, at *5 (N.D. Cal. Oct. 2, 2015). "Rule 12(e) motions are disfavored and rarely granted." *Id.* (citing *Castaneda v. Burger King Corp.*, 597 F. Supp. 2d 1035, 1045 (N.D. Cal. 2009)).

"Whether to grant a Rule 12(e) motion is within the discretion of the district court." *Star Fabrics Inc. v. Norm Thompson Outfitters, LLC*, No. 19-cv-2765, 2019 WL 6894528, at *1 (C.D. Cal. July 10, 2019). If the court grants a party's motion for more definite statement, the court may allow leave to amend the pleading to make them consistent with the rules of pleading outlined in Fed. R. Civ. P. 8. *See Mason v. Cnty. of Orange*, 251 F.R.D. 562, 563 (C.D. Cal. 2008).

## IV.   <u>DISCUSSION</u>

Both CCSD and the State Defendants move to dismiss Plaintiffs' FAC. The Court begins by addressing CCSD's motion before turning to the arguments asserted by the State Defendants.

### A. CCSD's Motions

CCSD asks the Court to dismiss Plaintiffs' complaint for failure to state a claim, or in the alternative, asks the Court to require Plaintiffs to clarify their pleading. (CCSD Mot. Dismiss ("CCSD MTD") 9:8–12:28, ECF No. 32) It further argues that Plaintiffs failed to prove each element required for a class action and the Court should therefore grant its Motion

to Strike the class allegations in Plaintiffs' FAC. (*Id.* 13:1–22:6). The Court first addresses the Motion to Dismiss and Motion for More Definite Statement for each of Plaintiffs' claims.

### 1. Motion to Dismiss and Motion for a More Definite Statement

CCSD first argues that all of Plaintiffs' claims against it should be dismissed because Plaintiffs failed to properly allege facts that support their claims in relation to both their class action and individual claims. (*Id.* 9:19–20). In the alternative, CCSD asks the Court to require Plaintiffs to identify with specificity the applicable policies and procedures, including the specific disabilities, education level, and the particular violation. (*Id.* 9:20–23).[3]

### a. ADA / Section 504 Claims

CCSD contends that Plaintiffs fail to allege facts to support a finding that the alleged discrimination was "by reason of" their disabilities, as is required to support a Title II ADA claim or Section 504 claim. (CCSD MTD 9:24–11:17).[4] Plaintiffs bring their Title II and Section 504 discrimination claims under a theory that they were denied reasonable accommodations. As the Ninth Circuit explained in *A.G.*, a plaintiff bringing suit under Section 504 or Title II of the ADA "must show that: (1) she is a qualified individual with a disability; (2) she was denied 'a reasonable accommodation that she needs in order to enjoy meaningful access to the benefits of public services;' and (3) the program in question receives federal financial assistance" (for the Rehabilitation Act claim) or is a public entity (for the ADA claim). *A.G. v. Paradise Valley Unified Sch. Dist. No. 69*, 815 F.3d 1195, 1204 (9th Cir. 2016) (quoting *Mark H. v. Hamamoto*, 620 F.3d 1090, 1097 (9th Cir. 2010) (citation modified).

---

[3] Under Local Rule IC 2-2(b), parties are required to file a separate document for each type of relief requested. The Court addresses CCSD's Motion for a More Definite Statement despite its failure to file a separate document for that relief in this motion, but future failure to comply with LR IC2-2(b) will result in the Court declining to address the additional forms of relief sought.

[4] CCSD also argues that Plaintiffs fail to plead facts sufficient to establish intentional discrimination, as is required when seeking money damages. (CCSD MTD 10:7–10). Because Plaintiffs are not seeking money damages, however, they are not required to show intentional discrimination. (FAC 58:22–60:1).

The parties do not dispute that Plaintiffs have satisfied the first and third elements at this stage. As to the second element, however, CCSD argues that Plaintiffs have failed to allege facts to support a finding that they were discriminated against by reason of their disabilities. (CCSD MTD 10:13–11:17). But as is evident in the Ninth Circuit's delineation of the elements of a Title II or Section 504 claim, the second prong is satisfied by a showing that Plaintiffs were denied a reasonable accommodation. *See A.G.*, at 1204 ("Plaintiffs may establish prohibited discrimination under Section 504 and Title II by showing that a public entity denied them a "reasonable accommodation" necessary to achieve meaningful access to her education."). The two cases CCSD provides do not support a finding otherwise, because neither case involved a reasonable accommodation claim. *See Estate of Martin v. Cal. VA*, 560 F.3d 1042 (9th Cir. 2009); *M.P.G. v. Antioch Unified Sch. Dist.*, 2023 WL 4053794 (N.D. Cal. June 2023).

Plaintiffs have pled sufficient facts to support their claim that they have been denied reasonable accommodations. The FAC contains numerous allegations that disability-specific services are available as a reasonable accommodation and that CCSD has failed to provide them, including allegations that CCSD does not provide any resources for students with dyslexia, (FAC ¶ 55), and does not provide research-backed supports for students with behavioral management needs or autism, (FAC ¶¶ 56, 57). These allegations, along with the allegations of each individual named Plaintiff, are sufficient to state a claim at this stage. *See Iqbal*, 556 U.S. at 678. The Court therefore DENIES CCSD's Motion to Dismiss Plaintiffs' ADA and Rehabilitation Act claims for failure to state a claim.

In the alternative, CCSD argues that the Court should require Plaintiffs to identify the specific disabilities in relation to each policy asserted in the FAC. (CCSD MTD 11:18–21). It contends that the policies identified in the FAC pertain to disabilities generally, and Plaintiffs should instead be required to identify the specific disability that each policy is discriminating against. (*Id.*). As explained above, the FAC contains several allegations that identify specific

alleged failures to provide accommodations to students with several specifically identified disabilities. (FAC ¶¶ 55–57; 71; 73; 77; 78; 81; 82; 84; 86; 87;89; 92; 95; 98; 111).  These specific allegations are not "so vague or ambiguous that [CCSD] cannot reasonably prepare a response." Fed. R. Civ. P. 12(e).  Accordingly, the Court denies CCSD's Motion for a More Definite Statement on Plaintiffs' ADA and Rehabilitation Act claims.

### b.  IDEA Claims

CCSD next argues that Plaintiffs allegations supporting their IDEA claims are conclusory. (CCSD MTD 11:23–25).  It asks the Court to either dismiss the IDEA claims because the conclusory allegations fail to state a claim or require Plaintiffs to provide a more definite statement. (*Id.*).  To support this argument, CCSD points to what it calls "boilerplate allegations" that it failed to provide FAPE and the LRE to disabled students. (*Id.* 11:26–12:22). It contends that Plaintiffs have failed to identify specifics, such as the types of behaviors that CCSD fails to address and specifics regarding transition services. (*Id.* 12:22–26).

As with the Title II and Section 504 claims above, the Court disagrees.  The FAC contains numerous specific allegations, including the alleged systemic deficiencies identified in the CGCS Review of special education services that CCSD commissioned by the Council of Great City Schools ("CGCS"). (FAC ¶ 53).  It provides specific alleged examples of policies and practices that violate the IDEA, including a policy of instructing general education teachers not to tell parents that their children may need evaluation for special education services. (*Id.* ¶ 54).  Plaintiffs allege that CCSD has a policy of failing to provide adequate supports to ensure that children are educated in the LRE, and that the district maintains a policy of ignoring staffing shortages and removing staff from classrooms resulting in a denial of FAPE and a lack of access to the LRE. (*Id.* ¶¶ 58–64).  And the allegations regarding the named Plaintiffs are even more specific in identifying the ways CCSD allegedly violated the requirements of the

1    IDEA as to each named Plaintiff. (*Id.* ¶¶ 69–111). The Court therefore DENIES CCSD's

2    Motion to Dismiss and Motion for a More Definite Statement as to Plaintiffs' IDEA claims.

3          **2. Motion to Strike Class Allegations**

4          CCSD next moves to strike the class allegations because it argues that Plaintiffs failed to

5    prove each element required for a class action lawsuit. (CCSD Mot. Strike 13:1–14:2, ECF No.

6    33). Federal Rule of Civil Procedure 12(f) provides that a court "may strike from a pleading an

7    insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." "[T]he

8    function of a 12(f) motion to strike is to avoid the expenditure of time and money that must

9    arise from litigating spurious issues by dispensing with those issues prior to trial." *Fantasy, Inc.*

10   *v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993) (citations omitted), *overruled on other*

11   *grounds*, 510 U.S. 517 (1994). Class allegations may be stricken at the pleading stage. *Kamm*

12   *v. Sugasawara*, 509 F.2d 205, 212 (9th Cir. 1975). Motions to strike class allegations are

13   generally disfavored, however, because a motion for class certification is a more appropriate

14   vehicle for testing the validity of class claims. *Ott v. Mortgage Investors Corp. of Ohio, Inc.*, 65

15   F. Supp. 3d 1046, 1062 (D. Or. 2014) (quoting *Thorpe v. Abbott Labs., Inc*, 534 F. Supp. 2d

16   1120, 1125 (N.D. Cal. 2008)). Motions to strike are granted "only where 'the complaint

17   demonstrates that a class action cannot be maintained.'" *Id.* (quoting *Tietsworth v. Sears,*

18   *Roebuck & Co.*, 720 F. Supp. 2d 1123, 1146 (N.D. Cal. 2010)); *see also Austin v. Allied*

19   *Collection Services, Inc.*, No. 2:21-cv-01593, 2023 WL 375988, at *2 (D. Nev. Jan. 2023).

20         The Court is not convinced that this is the appropriate stage to decide the class

21   certification question. CCSD has not shown that it is evident from the FAC that a class action

22   cannot be maintained. It generally argues that it is "unlikely" that Plaintiffs will satisfy the

23   requirements for class certification, and that it "is difficult to determine" and "uncertain"

24   whether the requirements have been met. (*Id.* 16:3–4; 21:11–14). These contentions underscore

25   the Court's conclusion that it is premature to decide the merits of any purported class, as even

CCSD concedes that several issues regarding the viability of Plaintiffs' class action are uncertain at this stage. These issues are more properly evaluated on a motion for class certification after the parties have had an opportunity to develop the record further. Accordingly, the Court DENIES CCSD's Motion to Strike Class Allegations.

### B. State Defendants' Motion to Dismiss

The State Defendants move to dismiss Plaintiffs' claims against them, arguing that Plaintiffs' FAC fails for the following reasons: (1) Plaintiffs lack standing for IDEA claims against NDE because there is no private right of action; (2) COPAA fails to show associational standing; (3) Plaintiffs have admittedly failed to exhaust the IDEA administrative process; (4) Plaintiffs' claims fail to satisfy class requirements; (5) Plaintiffs fail to state IDEA claims upon which relief can be granted against NDE; (6) Plaintiffs fail to state any claims upon which relief can be granted against NDE; and (7) the claims against official-capacity defendants are redundant of claims against NDE. (State Defs.' Mot. Dismiss ("State MTD") 2:4–5). The Court addresses each argument in turn.

#### 1. Private Right of Action

State Defendants argue Plaintiffs have no private right of action against the NDE under the IDEA. (*Id.* 3:16–21). A plaintiff in federal court must establish "the existence of a right of action authorizing the court to grant the requested relief." *Fairfield-Suisun Unified Sch. Dist. v. California Dept. of Educ.*, 780 F.3d 968, 970 (9th Cir. 2015). Because Plaintiffs are suing to enforce the IDEA, they must show that the IDEA creates a right of action authorizing them to sue the Department of Education for the relief they seek. *Id.* A statute can confer a right of action expressly or by implication. *See id.* at 971.

The IDEA defines at least one right of action expressly. Under 20 U.S.C. § 1415(b)(6), states must provide "an opportunity for any party to present a complaint," and the state must then conduct "an impartial due process hearing." *Id.* § 1415(f)(1)(A). After this hearing,

[a]ny party aggrieved by the findings and decision. . . shall have the right to bring a civil action with respect to the complaint presented pursuant to this section, which action may be brought. . . in a district court of the United States, without regard to the amount in controversy.

*Id.* § 1415(i)(2)(A).

The State Defendants argue that the Ninth Circuit's decision in *M.M. v. Lafayette School District*, 767 F.3d 842, 860 (9th Cir. 2014), precludes Plaintiffs from bringing claims against NDE here. (State MTD 3:23–4:6). In *Lafayette*, the Ninth Circuit stated that §§ 1412(a) and 1415(a) of the IDEA do not provide a private right of action. 767 F.3d at 860. But this statement does not decide the issue here for two reasons. First, while the court in *Lafayette* stated that there is no express private right of action, it explicitly declined to reach the question of whether a private right of action can be implied. *Id.* at 890 n. 8. This leaves open the question of whether an implied private right of action exists for plaintiffs to sue state education agencies like NDE.

Second, *Lafayette* involved the rights of a single student. As the court in *Morgan Hill Concerned Parents Association v. California Department of Education* explained, "*Lafayette* offers little guidance in this case, where the plaintiffs . . . advance claims of system-wide failures." 258 F. Supp. 3d 1114, 1124 (E.D. Cal. 2017). Based on this distinction and the *Lafayette* court's reservation of the implied private right of action question, the court in *Morgan Hill* ultimately found that *Lafayette* did not conflict with its prior order finding that there was a private right of action for plaintiffs to bring systemic claims against a state education agency. *Id.* Every court in this circuit to consider this question since *Lafayette* has reached the same conclusion. *See, e.g.*, *S.B. by & through Kristina B. v. California Dep't of Educ.*, 327 F. Supp. 3d 1218, 1242 (E.D. Cal. 2018); *Everett H. ex rel. Havey v. Dry Creek Joint Elementary Sch. Dist.*, No. 2:13-CV-00889-MCE, 2015 WL 5444704, at *2 (E.D. Cal. Sept. 15, 2015); *Emma C. v. Eastin*, No. 96-CV-04179-TEH, 2015 WL 5029283, at *5 (N.D. Cal. Aug. 25, 2015), *aff'd*

*sub nom. Emma v. Eastin*, 673 F. App'x 637 (9th Cir. 2016); *M. C. v. Los Angeles Unified Sch. Dist.*, 559 F. Supp. 3d 1112, 1120 (C.D. Cal. 2021). The Court is persuaded by the reasoning of these courts and follows the weight of precedent in concluding that there is a private right of action for Plaintiffs here to bring their claims against NDE. Accordingly, the Court DENIES the State Defendants' Motion to Dismiss on this ground.

### 2. Associational Standing

Article III of the Constitution limits the federal judicial power to cases or controversies, "thereby entailing as an 'irreducible minimum' that there be (1) an injury in fact, (2) a causal relationship between the injury and the challenged conduct, and (3) a likelihood that the injury will be redressed by a favorable decision." *United Food & Commer. Workers Union Local 751 v. Brown Grp.*, 517 U.S. 544, 551 (1996). Supplementing these constitutional requirements, the prudential doctrine of standing has come to encompass "several judicially self-imposed limits on the exercise of federal jurisdiction." *Id.* (quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984)).

An association has standing to bring suit on behalf of its members when: (1) "its members would otherwise have standing to sue in their own right," (2) "the interests at stake are germane to the organization's purpose," (3) and "neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Friends of the Earth, Inc. v Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000) (citing *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 343 (1977)). The first and second prongs of the criteria are constitutional in nature and are required for Article III standing; the third is prudential. *United Food*, 517 U.S. at 555–56.

The State Defendants argue that Plaintiff COPAA[5] does not have associational standing. (State MTD 4:22–6:14).  The State Defendants' argument appears to focus on the first prong of the associational standing test: whether COPAA's members would have standing to sue in their own right. (*Id.* 5:23–6:2).[6]  For the first prong, the State Defendants argue that there is not enough information in Plaintiffs' allegations to verify that COPAA has members that have the standing to sue, and that it is unlikely they would have standing because there is no private right of action to sue the State Defendants. (*Id.* 5:23–26).  Having already addressed the private right of action argument, the Court focuses its inquiry on whether Plaintiffs have alleged sufficient information to establish that its members would have standing to sue.

While State Defendants argue that COPAA is required to state the identities of COPAA's members that would have standing, such allegations need not be made where "it is relatively clear . . . that one or more members have been or will be adversely affected by a defendant's action, and where the defendants need to know the identity of a particular member to understand and respond to the organization's claim of injury." *Nat'l Council of La Raza v.*

---

[5] COPAA is a national not-for profit membership organization of parents of children with disabilities, their attorneys, and their advocates. (FAC ¶ 25).  Its mission is to protect and enforce the level and civil rights of students with disabilities and their families, and its members include attorneys, advocates, and families in Clark County. (*Id.*).

[6] The State Defendants also seem to cursorily challenge whether the third prong is met, stating that "COPAA will likely need its members to participate in the lawsuit as witness and counsel." (State MTD 6:1–2).  State Defendants provide no authority for this argument.  The third prong of associational standing is generally satisfied where an association seeks just injunctive or declaratory relief because these remedies do not usually depend on the individualized circumstances of members. *See United Food*, 517 U.S. at 546 (explaining that "individual participation is not normally necessary when an association seeks prospective or injunctive relief for its members" (cleaned up)).  Because Plaintiffs seek only injunctive relief for its members, rather than damages for its members, the Court finds that the third prong of associational standing is met. *See id.*

*Cegavske*, 800 F.3d 1032, 1041 (9th Cir. 2015).[7]  The FAC alleges that "COPAA has active members in Clark County, including parents of children who are eligible for special education and related services under IDEA and are currently experiencing, or are at substantial risk of experiencing, and denial of FAPE." (FAC ¶ 27).  Under the IDEA, denial of a FAPE to a child is also in injury to a parent. *Winkelman ex. rel. Winkelman v. Parma City Sch. Dist.*, 550 U.S. 516, 531 (2007).  Because the named Plaintiffs allege that they are either currently being denied a FAPE or are at risk of being denied one, and because parents of those Plaintiffs are among COPAA's members, it is relatively clear that one of more COPAA members has suffered or will suffer harm from the alleged failures to provide FAPE alleged in the FAC.  Accordingly, Plaintiffs have sufficiently alleged facts to satisfy the requirements of associational standing. *See Nat'l Council of La Raza*, 800 F.3d at 1041.

### 3. Exhaustion

The State Defendants next argue that Plaintiffs were required to exhaust their administrative remedies completely before pursuing the IDEA claims filed with this Court. (State MTD 6:14–14:16).  Because their claims were not exhausted, the State Defendants contend that the case must be dismissed.

---

[7] The State Defendants assert that *Nat'l Council of La Raza* was overturned by *Arizona Alliance for Retired Americans v. Mayes*, 117 F.4th 1165, 1177–78 (9th Cir. 2024).  But that opinion was vacated by *Ariz. All. for Retired Ams. Priorities USA v. Mayes,* 130 F.4th 1177, 1178 (9th Cir. 2025), and "a decision that has been vacated has no precedential authority whatsoever." *Durning v. Citibank, N.A.*, 950 F.2d 1419, 1424 (9th Cir. 1991) (citing *O'Connor v. Donaldson*, 422 U.S. 563, 578 n. 2 (1975)).  Further, State Defendants confuse their original association standing with an organizational standing argument in their Reply.  The portion of *Nat'l Council of La Raza* that Plaintiffs rely on is specifically addressing the requirement of associational standing, where an organization or association seeks to sue on behalf of its members.  The argument based on *Mayes* and the Supreme Court's recent decision in *FDA v. Alliance for Hippocratic Medicine*, 602 U.S. 367 (2024), advanced by State Defendants in their Reply pertains specifically to an organization seeking to establish standing by alleging that it has been harmed as an entity. *See Havens Realty Corp. v. Coleman*, 455 U.S. 363, 378–79 (1982) (holding that a plaintiff organization can assert standing by alleging a "concrete and demonstrable injury to [its] activites").  Because Plaintiffs assert that COPAA has associational standing based on injuries to its members, rather than injury to itself, this organizational standing argument is not relevant to the Court's analysis.

The IDEA requires educational agencies to implement procedures which provide "[a]n opportunity to present complaints with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a [FAPE] to such child." 20 U.S.C. § 1415(b)(6).  The parent or educational agency begins the process by filing a due process complaint for a "due process hearing" before an impartial hearing officer. 20 U.S.C. §§ 1415(b)(6), (b)(7), (f)(1)(A).  The hearing officer can order relief, such as requiring the educational agency to provide services to fulfill its obligations to provide a FAPE or to reimburse the parent for the cost of acquiring necessary services. *Id.* §§ 1401(22), 1412(a)(10)(C)(ii).  A party aggrieved by the findings and decisions made by the hearing officer has the right to bring a civil action in federal or state court within 90 days from the date of the decision of the hearing officer. *Id.* § 1415(i)(2).

The administrative appeal procedures must be pursued before seeking judicial review. *Id.* § 1415(l) ("[B]efore the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) shall be exhausted . . . .").  "The policies underlying the IDEA's administrative procedures reflect both general principles of administrative law and the educational philosophy of the IDEA." *Hoeft v. Tucson Unified Sch. Dist.*, 967 F.2d 1298 (1992).  It is the agencies, not the courts, which "ought to have primary responsibility for the programs Congress has charged them to administer." *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992).  In the IDEA context, exhaustion of administrative remedies "allows for the exercise of discretion and educational expertise by state and local agencies, affords full exploration of technical educational issues, furthers development of a complete factual record, and promotes judicial efficiency by giving these agencies the first opportunity to correct shortcomings in their educational programs for disabled children." *Hoeft*, 967 F.2d at 1303.

The Ninth Circuit has made clear that exhaustion requirements are not absolute and has identified certain exceptions to the exhaustion rule for situations in which exhaustion serves "no useful purpose." *Hoeft*, 967 F.2d at 1303. Exhaustion is not required when: (1) use of the administrative process would be "futile," (2) the claim arises from a policy or practice "or general applicability that is contrary to law," or (3) it is "improbable that adequate relief can be obtained by pursuing administrative remedies (*e.g.* the hearing officer lacks the authority to grant the relief sought)." *Paul G. by & through Steve G. v. Monterey Peninsula Unified Sch. Dist.,* 933 F.3d 1096, 1100 (9th Cir. 2019) (quoting *Hoeft*, 967 F.2d at 1303–04). "In determining whether these exceptions apply, [a court's] inquiry is whether pursuit of administrative remedies under the facts of a given case will further the general purposes of exhaustion and the congressional intent behind the administrative scheme." *Hoeft*, 967 F.2d at 1303. The IDEA's exhaustion requirement "applies differently to class actions than to suits brought by individuals, inasmuch as *each* class member need not exhaust before a suit is brought." *Id.* at 1309. But exhaustion is not excused for every class member, and "the mere fact that the complaint is structured as a class action seeking injunctive relief, without more, does not excuse exhaustion." *Id.* at 1208–09.

Plaintiffs argue that the administrative process the IDEA prescribes for appealing a child's IEP is inapplicable in this case for several reasons. First, they argue that the procedure in Nevada involves a right of appeal to NDE—a procedure not designed for NDE to hear claims against NDE itself. (Resp. State MTD 11:12–17, ECF No. 52). Second, they assert that the Nevada Office of Administrative Hearings and State Review Officers cannot order the relief that Plaintiffs seek in this action, including the appointment of a Monitor. (*Id.* 11:18–21). Third, and most substantively, Plaintiffs contend that the structural relief they are seeking excuses the exhaustion requirement. (*Id.* 11:22–13:26). The Court addresses each exception to exhaustion in turn.

### a. Futility

"IDEA administrative exhaustion is futile when 'serious due process violations' preclude meaningful administrative review of a plaintiff's claims and 'have the practical effect of denying the plaintiffs a forum for their grievances.'" *Hawai'i Disability Rights Center v. Kishimoto*, 122 F.4th 353, 365 (9th Cir. 2024) (quoting *Hoeft*, 967 F.2d at 1304). Administrative exhaustion under the IDEA is also futile when "plaintiffs ha[ve] already taken all measures to secure administrative relief which could reasonably be expected of them." *Kerr Center Parents Ass'n v. Charles*, 897 F.2d 1463, 1470 (9th Cir. 1990).

Plaintiffs contend that exhaustion is futile because Plaintiffs bring a claim against NDE, and the procedure in Nevada is not designed for NDE to hear claims against itself. (Resp. State MTD 11:12–17). The State Defendants respond that Plaintiffs are incorrect about NDE's role in Nevada's two-tiered system in that it only coordinates review by an impartial state review officer, so NDE would not be hearing claims against itself. (Reply State MTD 6:8–9, ECF No. 53).

In Nevada, when a parent challenges whether a school has provided her child with a FAPE, there is a two-tier system for due process hearings. *See* Nev. Admin. Code ("NAC") § 388.310, 388.315; *see also Amanda J. ex rel. Annette J. v. Clark Cty. Sch. Dist.*, 267 F.3d 877, 881 (9th Cir. 2001). At the first level of review, a hearing is conducted by an impartial hearing officer ("HO"), and the HO then issues findings of fact and a decision in writing. NAC §§ 388.306(10)(a), 388.310(11)-(12). A parent can then appeal the HO's decision for a second-level review before the state education agency (NDE), *see* 34 C.F.R. § 300.514(b), which occurs when the NDE appoints a state review officer ("SRO") to conduct a review of the HO's decision. NAC § 388.315(1). The SRO also issues written findings and a decision to the parties. *Id.* § 338.315(1)(g).

States have the ultimate responsibility for ensuring that local educational programs comply with the IDEA. 20 U.S.C. § 1414(b).  In evaluating local compliance, states are directed to "consider any decision made pursuant to a [due process] hearing held under section 1415 . . . which is adverse to the local education agency." 20 U.S.C. § 1414(b)(3).  As the Ninth Circuit explained in *Hoeft*, this administrative scheme is a resource to aid states in their oversight responsibilities. 967 F.3d at 1307.  Thus, administrative exhaustion can "give the state a reasonable opportunity to investigate and correct such policies." *Id.*

Here, Plaintiffs claims against NDE stem from the same IDEA violations as their claims against CCSD; Plaintiffs are not challenging a specific state policy but are instead asserting that NDE has failed to ensure that CCSD is complying with the law.  Plaintiffs are therefore seeking to hold NDE accountable for its failure to comply with its administrative oversight responsibilities—the same responsibilities that the Ninth Circuit has explained are aided by the very administrative scheme Plaintiffs want to avoid. *See Hoeft*, 967 F.3d at 1307.  Even if Plaintiffs are correct that they cannot bring a claim against NDE through the administrative process, the purpose of utilizing the administrative scheme is, in part, to put NDE on notice of the fact that CCSD is not complying with the law.  Thus, the inability to bring a claim against NDE here does not render the administrative process futile, because Plaintiffs' goal of securing NDE's compliance with its statutory duties can be furthered by exhausting the administrative process. *See Hoeft*, 967 F.3d at 1307.  Accordingly, the Court concludes that administrative exhaustion is not futile due to Plaintiffs' inability to bring an administrative claim against NDE.

### b.   Systemic Challenge and Inadequacy of Relief

Plaintiffs' remaining arguments fall under the inadequacy of remedies exception.  They assert that the administrative process cannot provide the relief they seek, including structural relief and the appointment of a monitor. (Resp. State MTD 11:18–24).

In *Hoeft*, the Ninth Circuit's seminal case on the exceptions to the IDEA's exhaustion requirements, the plaintiffs challenged the eligibility criteria and methodology used by the Tucson Unified School District to determine which disabled students would receive extended-year programming. 967 F.3d 1298 (9th Cir. 1992).  The court considered the plaintiffs' arguments that the inadequacy of remedies exception to their claims for systemic relief. *Id.* at 1308–09.  It explained that "[a]dministrative remedies are generally inadequate where structural, systemic reforms are sought." *Id.* at 1309.

The *Hoeft* court concluded that the challenge to Tucson Unified School District did "not rise to systemic proportions" such that administrative exhaustion was excused. *Id.*  It based this conclusion partially on the fact that the challenge was only to Tucson Unified's extended year program, one specific aspect of the program.  Moreover, the court reasoned that the equitable relief plaintiffs sought was not "structural in nature, but rather target[ted] predominantly substantive aspects of a single component of Tucson Unified's special education program." *Id.*

The court also made clear that the "mere unavailability of injunctive relief does not render the IDEA's administrative process inadequate." *Id.*  Instead, the relevant inquiry is whether the administrative process is adequately equipped to address and resolve the issues presented. *Id.*  Because the issues in *Hoeft* consisted "primarily of questions of substantive educational policy, issues which the administrative process was specifically designed to address," and the administrative process had "the potential for producing the very results plaintiffs [sought], namely, statutory compliance," the court concluded that the administrative process was not likely to provide inadequate relief. *Id.*  Thus, the *Hoeft* court concluded that judicial involvement in the case was unwarranted until administrative remedies had been exhausted. *Id.*

A few years later, based on a review of *Hoeft* and related cases from other circuits, the Ninth Circuit summarized the definition of a "systemic" challenge as one that either "implicates

the integrity or reliability of the IDEA dispute resolution procedures themselves or requires restructuring the education system itself in order to comply with the dictates of the Act." *Doe v. ex rel. Brockhuis v. Arizona Department of Education* 111 F.3d 678, 682 (9th Cir. 1997). It further explained that a challenge is not "systemic" if it "involves only a substantive claim having to do with limited components of a program, and if the administrative process is capable of correcting the problem."

The Ninth Circuit more recently considered this systemic exception to exhaustion in *Student A by & through Parent A v. San Francisco Unified School District*, 9 F.4th 1079 (9th Cir. 2021). There, the court concluded that the plaintiffs' complaint "neither indentifie[d] the policies or practices that need to be addressed nor explain[ed] why the pursuit of administrative remedies could not correct their deficiencies." *Id.* at 1085. It emphasized that "merely characterizing a school district's problem as 'systemic' and the relief sought as 'structural' does not provide the facts necessary to show that the allegedly needed reform is . . . 'anything other than increased funding and greater adherence to existing policies.'" *Id.* Though the plaintiffs argued that they had identified three specific unlawful policies or practices, the court concluded that they were "allegations of bad results, not descriptions of unlawful policies or practices." *Id.* It based this conclusion on the fact that the plaintiffs' claims were accompanied by general statistics documenting poor performance by students with disabilities. *Id.* Those statistics were not policies or practices that "a court could grasp, much less change, without the benefit of any factually developed administrative record." *Id.* Lastly, the *Student A* court emphasized that exhaustion would serve the important role in this case of giving the state of California a reasonable opportunity to investigate and correct the district's failures. *Id.*

Based on a review of the Ninth Circuit's cases on this issue, the Court concludes that the allegations in Plaintiffs' Complaint fall into the systemic exception to the IDEA's exhaustion requirement. Plaintiffs challenge several identified policies and practices across the entirety of

CCSD's special education system.  This case presents questions of law that the administrative process is not "adequately equipped to address and resolve the issues presented," and render "agency expertise and an administrative record unnecessary." *See Hoeft*, 967 F.2d at 1305–09. And it presents a unique situation in which the interest served by exhaustion is not substantial. *See id.* at 1307.

First, as to the systemic nature of the allegations, the case is distinct from both *Hoeft* and *Student A*.  Unlike *Hoeft*, where the court explicitly found that the challenge was not systemic because they were challenging only a "single component" of the program, Plaintiffs here challenge virtually every aspect of CCSD's special education system.  But, as the *Student A* court specified, just "describing problems as broad and far-reaching is not enough to meet this standard." 9 F.4th at 1084.

The court in *Student A* concluded that the allegations of bad results in the form of "general statistics documenting poor performance by students with disabilities," were not equivalent to allegations of systemic unlawful policies or practices. *Id*. at 1085.  Here, Plaintiffs did not base their allegations on statistics or "bad results." *Id.*  Rather, they specifically identify unlawful policies that they are challenging, including: (1) prohibiting general education teachers from referring students for special education evaluations or telling parents that they may seek and evaluation; (2) precluding teachers from identifying dyslexia as a child's disability on an IEP because CCSD does not have services to address that specific learning disability; (3) failing to sponsor districtwide training to ensure access to research-based interventions; (4) using the Response to Intervention process to delay or deny special education evaluations; and (5) allowing insufficiently trained staff to deliver instruction and related services and to assess and evaluate special education students. (FAC ¶ 12).

Take, for example, the alleged policy of prohibiting general education teachers from referring students for special education evaluations.  This allegation, which the Court must

accept as true at this stage, arguably states a facial violation of the IDEA's child find requirements. 20 U.S.C. § 1412(a)(3)(A); 34 C.F.R. § 300.111.  Just as the Ninth Circuit concluded for two of the policies alleged by the plaintiffs in *Hoeft*, Plaintiffs' challenge to this policy "presents a purely legal question," because determining whether the policy violates the IDEA "does not require technical educational expertise." *See* F.2d at 1306–1307.  In sum, rather pointing to "bad results" and seeking "greater adherence to existing policies," Plaintiffs are challenging specifically identified alleged policies that they argue are resulting in systemic violations of the IDEA. *See Student A*, 9 F.4th at 1085.

Plaintiffs allege that CCSD commissioned a review of its special education services in 2019, conducted by the CGCS. (FAC ¶ 53).  They assert that the review identified "an assortment of systemic deficiencies." (*Id.*).  The deficiencies delineated in the FAC based on that review are not just bad outcomes for students with disabilities—they are systemic policies and practices that Plaintiffs assert are resulting in a system-wide failure to comply with the IDEA.  The 244-page review gives an in-depth and highly specific description of district-wide practices that CGCS identified as missing or lacking.  Plaintiffs' allegations based on this review once again distinguish this case from *Student A*.  And Plaintiffs' allegations regarding the commission and publication of the review are also relevant in that, taken as true, they demonstrate that CCSD and NDE have been on notice of the alleged IDEA violations for almost five years prior to the filing of this litigation.  So, while the exhaustion of the administrative process typically "promotes judicial efficiency by giving these agencies the first opportunity to correct shortcomings in their educational programs for disabled children," *see Hoeft*, 967 at 1303, that interest does not appear to be served here.  CCSD and NDE have had access to this district-commissioned review for years: they don't need individual students to bring challenges to their individual services to be aware of the alleged deficiencies in their special education program resulting in violations of federal discrimination laws.

Based on the allegations here, administrative challenges brought by individual students are also unlikely to result in changes to the policies identified in Plaintiffs' FAC. For example, Plaintiffs allege that "CCSD maintains a district-wide policy of ignoring staffing shortages and disproportionately using long-term substitutes, non-certified staff, and paraprofessionals to provide services to students with disabilities." (FAC ¶ 59). If a student were to successfully exhaust their administrative remedies, and the Hearing Officer were to find that CCSD must provide the student with a one-on-one paraprofessional in order to provide the student with a FAPE, the district's alleged policy of having insufficient staff could realistically result in the district's inability or failure to meet that requirement for that student. This is well illustrated by Plaintiffs allegations that one of the named Plaintiffs, H.P., did pursue the state procedure during the 2023–24 school year. (FAC ¶ 12(c)). While the complaint investigation concluded that "CCSD committed numerous procedural and substantive violations of IDEA and awarded relief," CCSD allegedly continued to commit the same violations in the next school year "because of the policies set forth [in the Complaint], and the lack of trained staff and resources." (*Id.*). Taking the allegations in the FAC as true, as the Court must at this stage, it is difficult to find support for a conclusion that administrative exhaustion could "produce the very result Plaintiffs seek." *See Hoeft*, 967 F.2d at 1309.

Because Plaintiffs identify systemic policies and practices that appear to "require[] restructuring the education system itself in order to comply with the dictates of the [IDEA]," the Court finds that this case falls into the systemic challenge exception to the IDEA administrative exhaustion requirement. Indeed, if this case does not satisfy the requirements of the exception, it is hard to imagine a case that would. Accordingly, the Court DENIES the State Defendants' Motion to Dismiss for failure to exhaust administrative remedies.

///

///

### 4.  Motion to Strike Class Allegations

State Defendants move to dismiss based on a failure to meet the requirements for class certification, which the parties appear to agree should be treated as a motion to strike class allegations. (Resp. State MTD 14:16–17); (Reply State MTD 8:10–17).  Like the Motion to Strike by CCSD addressed above, the Court is not convinced by the State Defendants' arguments as to why it should analyze the sufficiency of the class allegations now when "a motion for class certification is a more appropriate vehicle for testing the validity of class claims." *Ott*, 65 F. Supp. 3d at 1062.  The Court therefore denies the Motion to Strike class allegations and reserves the question of the validity of the class claims for class certification. *See Austin*, No. 2:21-cv-01593, 2023 WL 375988, at *2 (denying a motion to strike class allegations as premature).

### 5.  Failure to State a Claim

Lastly, the State Defendants argue that Plaintiffs fail to state any claims against NDE and move for dismissal of the IDEA, Title II, and Section 504 claims against NDE under Federal Rule of Civil Procedure 12(b)(6). (State MTD 20:10–24:3).  They also argue that the claims against State Superintendent of Public Instruction Johne Ebert should be dismissed as redundant. (*Id.* 24:6–16).

#### a.  IDEA

As to the IDEA claims, the State Defendants acknowledge that the IDEA requires it to monitor Local Education Agencies' (LEAs) implementation of the IDEA. (State MTD 20:13–14).  But they argue that the requirement for it to monitor school districts is specifically enforced by the United States Department of Education. (*Id.*).  This argument implies, though the State Defendants do not specifically state this, that the Department of Education has the sole ability to enforce NDE's statutory duties under the IDEA, and therefore Plaintiffs cannot bring this enforcement action.  But, as analyzed above, the Court has already determined that

there is a private right of action here for Plaintiffs to bring IDEA claims against NDE. (*See supra*, Section IV(B)(1)).  And even if true, NDE's argument that the Department of Education recently provided NDE with its most recent monitoring report that stated that "it has not identified any noncompliance with NDE's monitoring and improvement," would not change the outcome at this stage, where the Court is required to accept all allegations as true.[8]

The State Defendants further assert that NDE is only required to intervene when there is a significant breach and the state officials have been given adequate notice of the local district's noncompliance and a reasonable opportunity to compel local compliance. (State MTD 20:14–19) (quoting *Doe*, 793 F.2d at 1492).  But the Ninth Circuit case they rely on for that contention is a case in which the Ninth Circuit held that, in cases of denial of FAPE to an *individual child*, the State is obligated to provide services directly to that child. *See Doe*, 793 F.2d at 1492.  Plaintiffs are not asking NDE to provide services directly to a child who is being denied a FAPE by their school district; they are seeking compliance with NDE's statutory duty of monitoring public schools' compliance with the IDEA. (FAC ¶ 129) (citing 20 U.S.C. §§ 1412(a)(1), (a)(5)).  Thus, the holding Defendants rely on in *Doe* does not apply here.  None of the State Defendants' arguments lead the Court to conclude that Plaintiffs' allegations, taken as true, fail to state a claim to relief that is plausible on its face." *See Iqbal*, 556 U.S. at 678.  Accordingly, the State Defendants' Motion to Dismiss for failure to state a claim is DENIED.

///

///

---

[8] The Court notes that, though the State Defendants asserted that the US ED did not identify *any* noncompliance with NDE's monitoring and improvement system, Plaintiffs pointed the Court to the US ED's most recent monitoring report for NDE, which in fact identifies "three findings of noncompliance with IDEA requirements." *Nevada Differentiated Monitoring and Support Report*, Office of Special Education Programs, U.S. Department of Education (Oct. 4, 2024), https://www.ed.gov/sites/ed/files/2024-11/dms-nv-b-report-10-04-2024.pdf. Though the Court concludes that the outcome of the report is not relevant to whether Plaintiffs have sufficiently stated a claim against NDE in their FAC, Defendants fail to explain in their Reply their seeming mischaracterization of the Monitoring Report, instead asserting that the findings of noncompliance in the Report does not establish a claim for Plaintiffs.

**b. Title II / Section 504 Claims**

The State Defendants next argue that Plaintiffs bringing Section 504 claims in the special education context must show that the educational decisions relating to the student constitute "bad faith or gross misjudgment." (State MTD 22:4–17) (citing *N.L. v. Knox County Schs.*, 315 F.3d 688, 695–96 (6th Cir. 2003)). Because Plaintiffs have not asserted that NDE acted in bad faith or with gross misjudgment, the State Defendants contend that the Title II and Section 504 claims against it must be dismissed.

There are several issues with this argument. First, the Ninth Circuit does not apply the bad faith and gross misjudgment standard adopted by other circuits. *See Mark H. v. Hamamoto*, 620 F.3d 1090, 1097 (9th Cir. 2010). And second, after the parties submitted their briefing, the Supreme Court reversed the Eight Circuit's application of the bad faith and gross misjudgment standard. *See generally A.J.T. ex rel. A.T. v. Osseo Area Sch., Indep. Sch. Dist., No. 279*, 605 U.S. 335 (2025). In doing so, the Supreme Court held that students with disabilities do not have to "satisfy a more stringent standard of proof than other plaintiffs to establish discrimination under Title II of the ADA and Section 504 of the Rehabilitation Act." *Id.* at 351.

The State Defendants also argue that, because NDE does not provide services to Plaintiffs, it cannot have denied reasonable accommodations to them in violation of Title II and Section 504. (State MTD 22:18–23:2). But Plaintiffs have explicitly alleged that NDE discriminated against them by "providing significant assistance to CCSD even though it discriminates against these children on the basis of disability." (FAC ¶ 139). Defendants cite no case law to support its argument that such an allegation is insufficient to state a claim against NDE. Accordingly, the Court finds that Plaintiffs have successfully stated a Title II and Section 504 claim against NDE.

///

///

### c. Official Capacity Claims

The State Defendants ask the Court to dismiss the claims against Johne Ebert, arguing that the claims against her and NDE are redundant. (State MTD 24:4–16). The Supreme Court has clarified that "official-capacity actions for prospective relief are not treated as actions against the State." *Hafer v. Melo*, 502 U.S. 21, 27 (1991). Thus, official capacity claims for injunctive relief are legally distinct from claims against the state entity. The Court therefore declines to dismiss Defendant Johne Ebert from this case.

## V.    UNDERLINE CONCLUSION

**IT IS HEREBY ORDERED** that Clark County School District's Motion to Dismiss, (ECF No. 32), is **DENIED.**

**IT IS FURTHER ORDERED** that Clark County School District's Motion to Strike, (ECF No. 33), is **DENIED**.

**IT IS FURTHER ORDERED** that the State Defendants' Motion to Dismiss, (ECF No. 45), is **DENIED.**

**IT IS FURTHER ORDERED** that the State Defendant's Motion to Strike, (ECF No. 56), is **DENIED** as moot.

**DATED** this   18   day of September, 2025.

_____

Gloria M. Navarro, District Judge
UNITED STATES DISTRICT COURT