sLori C. Rogich
Nevada State Bar No. 12272
ROGICH LAW FIRM, PLLC
6070 Eastern Avenue, Suite 270
Las Vegas, Nevada 89119
702.279.2491
lori@rogichlawfirm.com

Courtney McCandless
Nevada State Bar No. 13722
SIMMONS FREEMAN LLC
3625 S. Town Center Drive, Suite 150
Law Vegas, Nevada 89135
702.846.4689
cmccandless@nvtrustlawyers.com

Hillary D. Freeman*
NJ ID No. 002362006
PA ID No. 200109
FREEMAN LAW OFFICES, LLC
100 Canal Pointe Blvd, Suite 121
Princeton, New Jersey 08540
609.454.5609
hillary@freemanlawoffices.com

Judith A. Gran*
PA ID No. 41034
Catherine Merino Reisman*
PA ID No. 57473
NJ ID No. 035792000
NY ID No. 5640172
REISMAN GRAN ZUBA LLP
923 Haddonfield Road, Suite 300
Cherry Hill, New Jersey 08002
856.354.0021
catherine@rgz.law
judith@rgz.law

Jeffrey I. Wasserman*
NJ ID No. 037051999
NY ID No. 3046448
Gregory G. Little*
NY ID No. 4288544
WASSERMAN LITTLE LLC
300 Witherspoon Street, Suite 201
Princeton, New Jersey 08542
973.486.4801
jwasserman@wassermanlittle.com
glittle@wassermanlittle.com

Attorneys for Plaintiffs

*Admitted pro hac vice

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| L.W., by and through his Parent and Next Friend, C.W. and C.W., individually, *et al.,*<br><br>Plaintiffs,<br><br>v.<br><br>NEVADA DEPARTMENT OF EDUCATION, *et al.*,<br><br>Defendants. | Case No.: 2:24-cv-01800-GMN-DJA<br><br>**PLAINTIFFS' RULE 72 OBJECTION TO MAGISTRATE'S RULING (ECF [No.] 149) AND REQUEST FOR RECONSIDERATION BY THE DISTRICT COURT JUDGE** |

Under Fed. R. Civ. P. 72 and LR IB 3-1, Plaintiffs hereby object to, and seek reconsideration of, the Magistrate Judge's April 17, 2026 Order (Order) (ECF [No.] 149) to the extent that it denied Plaintiffs relief against Clark County School District (CCSD) regarding

1

CCSD's failures to provide discovery. Plaintiffs' Objection and Request for Reconsideration is based upon the papers and pleadings on file herein and on the facts and arguments below.

## MEMORANDUM OF POINTS AND AUTHORITIES

### PRELIMINARY STATEMENT

Plaintiffs commenced this action to obtain systemic reform of CCSD's broken special education system, which directly impacts more than 40,000 students and their families within Clark County. The issues are urgent, as every day lost is a day that CCSD's special education population will never recover. Yet, despite the urgency, CCSD chose to slow-walk this case, to the detriment of its students, and to refuse to participate in good faith in discovery in all respects. The Order rewards CCSD's misconduct.

This is not a case in which the Court is being asked to sanction a litigant upon the first sign of trouble. On July 30, 2025, Magistrate Judge Albregts granted Plaintiffs' Motion to Compel (ECF [No.] 75), leaving CCSD with both a clear directive to produce documents, and no judicial cover for refusing to do so. CCSD nonetheless ignored that order, producing nothing of substance and offering no excuse, much less a justification, for its noncompliance. And on the underlying motion, CCSD never rebutted—indeed, never even seriously engaged with— Plaintiffs' detailed showing that CCSD's discovery responses remain deficient in virtually every respect. On that overwhelming, materially-undisputed record, the Order nonetheless denies every form of relief Plaintiffs requested (except for fees and costs related to a deposition that a CCSD witness failed to attend), and does so without any substantive analysis whatsoever. The Order thus does not just overlook CCSD's intransigence, it ratifies it.

The Order is wrong in almost every respect, including by denying specific relief that Plaintiffs did not seek, relying on assertions of fact that are clearly erroneous based on the record, and otherwise failing to address CCSD patent failures to produce discovery in this case.

There is **no dispute** that CCSD failed to appear for its 30(b)(6) deposition. Indeed, the Court below ordered CCSD to reimburse Plaintiffs' fees and costs related to one particular non-appearance. Under these circumstances, the failure of the Court below to require CCSD to produce its 30(b)(6) witness(es) makes no logical sense and is clear error. Likewise, there is **no dispute** that CCSD did not undertake a collection and review of its electronic data in response to the discovery demands, and thus that CCSD necessarily did not undertake to perform, much less purport to have performed, a full production of documents, yet the Court below determined that it would not require CCSD to do so. The record is clear. The Order is clearly erroneous.

The Court below focused on purported procedural issues to avoid addressing the merits of the motion. But the Court below committed clear error with respect to the issues it referenced to avoid the merits. As one example, the Court below determined that it could not undertake the required analyses because "it does not appear from Plaintiffs' motion that they have previously moved to compel CCSD to provide the documents at issue. This information is critical to the Court's analysis because a motion to compel is a prerequisite to the Court considering and imposing sanctions under Rule 37(a)(5) or 37(b)(2)." Order, at 4. Plaintiffs' motion, however, explicitly refers to its prior motion to compel (*see*, *e.g.*, *Pl. Motion* at 14; *see also* Declaration of Gregory G. Little (*Little Decl. II*) ECF [No.] 111-1*, at ¶ 26, and so too does CCSD's response. *See* ECF [No.] 127, ¶ 6. Of course, the prior motion to compel, and the decision granting it, also are referenced on the docket for this case.

And even if the Court below had analyzed and then rejected Plaintiffs' request for sanctions, it should not have been a close call for the Court below, at a minimum, to require CCSD to conduct a proper document collection, review and production, and to produce duly noticed deposition witnesses. The Order therefore is clearly erroneous and manifestly unjust.

3

Plaintiffs respectfully submit that the Order should be reversed to the extent of this objection, and that CCSD should be sanctioned and/or directed to produce the discovery that it has failed to produce to date. There simply is no good reason—based on the facts, the law, or general notions of fairness—that CCSD should not be directed to produce discovery.

## ARGUMENT

This case alleges the systematic denial, by the fifth largest school district in the country, of the rights of 40,000 students with disabilities under the Individuals with Disabilities Education Act. 20 U.S.C. § 1400, *et seq.* (IDEA), Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 (Section 504), and Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131, *et seq.* (ADA). As this Court recognized in denying the Motion to Dismiss, the First Amended Complaint in this matter identifies systemic policies and practices that appear to require restructuring the education system itself to comply with the dictates of federal law. ECF [No.] 105 at 30. This is a consequential matter that has serious implications for tens of thousands individual students with disabilities, and yet the Order from the Court below allows CCSD to flout its discovery obligations in this case with impunity.

**A.    CCSD Repeatedly and Consistently Disregarded Its Discovery Obligations**

*Little Decl. II* sets forth CCSD's misconduct in painstaking detail. In sum, from the very beginning of this case, CCSD has missed discovery deadlines, failed to provide even arguably sufficient discovery responses, and otherwise obstructed the efficient progression of this case. Plaintiffs timely completed all discovery, including producing all Plaintiffs for deposition.[1]

Not only did CCSD fail to produce documents in response to document requests that it has possessed since March 7, 2025, more than seven months before Plaintiffs filed the underlying motion, but CCSD also took none of the steps necessary to collect, review and

---

[1] One Plaintiff's deposition was cancelled at the request of counsel for CCSD, who never sought to re-schedule it. So, discovery was a one-way street in this case.

produce electronic discovery until August 2025, five months after it first received the document requests. In other words, CCSD did not even make an effort to provide sufficient document discovery, and thus necessarily did not make a sufficient document discovery.

This discovery failure requires explanation in detail. As set forth in the *Little Decl. II*:

31.    Although CCSD had the discovery requests since March 7, 2025, CCSD waited almost five months to request, for the first time on August 1, 2025, six weeks prior to the discovery cut-off, that Plaintiffs provide search terms for electronic discovery.

32.    We provided Ms. Nichols with search terms and requested that CCSD produce a spreadsheet showing how many unique hits there were on the search terms so that the parties would be able to narrow any search terms that appeared overbroad. We requested that CCSD produce the "hits" spreadsheet by the end of that week, August 15, 2025. Ex. 9.

33.    CCSD did not provide the spreadsheet showing the unique hits by August 15, 2025.

34.    On August 20, 2025, we engaged in a meet and confer. CCSD again promised that appropriate discovery responses would be forthcoming.

35.    Ms. Nichols informed us on August 26, 2025, that she did not know when CCSD would provide a spreadsheet identifying the unique hits.

36.    On August 27, 2025, Ms. Nichols informed us that CCSD would provide the spreadsheet on August 29, 2025. CCSD did not do so.

37.    On September 4, 2025, CCSD provided a spreadsheet, but it did not identify the actual number of documents, only the number of "hits."

38.    On September 7, 2025, Ms. Freeman emailed Ms. Nichols requesting that she ask her client to re-run the search terms against a limited set of custodians –specifically the individuals CCSD identified to appear as 30(b)(6) witnesses – as a sample set. Ex. 10. CCSD did not respond.

39.    After Ms. Freeman and I had difficulties obtaining Ms. Nichols' attention about the spreadsheet, on September 10, 2025, co-counsel Jeffrey I. Wasserman contacted Ms. Nichols to set up a phone call to discuss electronic discovery issues. Ex. 11 at 3. CCSD did not respond.

40.    The next day, September 11, 2025, Mr. Wasserman sent a substantive email to Ms. Nichols explaining why the hit list CCSD provided was not particularly relevant to any burdensome analysis, and asking CCSD to run the list against its identified 30(b)(6) witness as a sample set, and to provide the number of unique hits or unique documents, so that the parties could have a better sample set to determine which terms, if any, need modifications. Ex. 11 at 2-3.

41.    He also informed CCSD that Plaintiffs believe there are other appropriate custodians to be searched, but that Plaintiffs would be willing to wait

5

for the sample set against the 30(b)(6) custodians. He concluded his email, "[w]e therefore would ask that you get this process in motion this morning so we can get to the next steps. Let me know if you need to discuss this further, or if you want to put the vendor in touch with me." CCSD did not respond.

42.     On September 11, 2025, the parties filed a Proposed Stipulation and Order to Extend Discovery Plan and Scheduling Order. ECF No. 103. The parties represented to the Court:

> Plaintiffs provided CCSD with search terms for the production on August 12, 2025. CCSD provided a spreadsheet with the number of unique hits for Plaintiffs to narrow the search. **CCSD is currently running those search terms against a limited set of custodians – specifically, the individuals CCSD identified to appear as 30(b)(6) witnesses – as a sample set**. Depending on the results, Plaintiffs have reserved the right to have searches run for additional custodians. ECF No. 103 (emphasis added).

43.     The Court approved the Stipulation on September 12, 2025. ECF No. 104.

44.     Mr. Wasserman sent a follow-up email to Ms. Nichols on September 18, 2025, requesting that she confirm that CCSD was proceeding as set forth in his September 11, 2025 email, as well as the September 11, 2025 Stipulation approved by the Court. CCSD did not respond. Ex. 11 at 2.

45.     Mr. Wasserman sent another follow-up email to Ms. Nichols on September 19, 2025. CCSD did not respond. Ex. 11 at 1.

46.     On September 23, 2025, given CCSD's failure to complete its document production (or produce any additional documents for that matter) by the September 22, 2025 date in the stipulation, and its lack of response to Mr. Wasserman's emails, I requested that Ms. Nichols provide dates for a meet and confer on Wednesday, September 24, 2025. Ex. 12 at 1-2. Ms. Nichols responded that she would be available on Thursday, September 25, 2025. Ex. 12 at 1.

47. During the September 25, 2025 meet and confer, Ms. Nichols advised that CCSD would not proceed as it had represented to the Court in the September 11, 2025 Stipulation submitted to the Court for approval. Despite CCSD's representation that it "is currently running those search terms against a limited set of custodians – specifically, the individuals CCSD identified to appear as 30(b)(6) witnesses – as a sample set" (ECF No. 103) that apparently was not true.

48. Instead of completing what it represented it had begun, CCSD requested that we choose ten search terms (give or take) to run against the 30(b)(6) witness custodians. When we asked why she was not using an electronic-discovery vendor to streamline the process, Ms. Nichols stated unequivocally that CCSD could not use a vendor for privacy/confidentiality reasons.

49.     Although we did not think CCSD running the search it proposed would address any scope issues because the results would not provide unique hits and

unique document counts, we provided limited search terms by email dated September 26, 2025. Ex. 13 (explaining why CCSD proposed methodology would not advance the process).

50.     On September 30, 2025, CCSD again provided a list that did not identify unique responsive documents. Indeed, that list was even less useful than the first hit list, because this time CCSD only told us how many emails—unfiltered by search terms—certain custodians possessed. Ex. 14. That information has very limited utility here.

51.     Importantly, though, and directly contrary to her unequivocal statement during the meet and confer that CCSD could not use a discovery vendor, Ms. Nichols stated that she had communicated with a discovery vendor and received a quote from it to do the required work. Astoundingly, a mere two weeks before the discovery end date, CCSD indicated that it would seek to have those discovery costs shifted to Plaintiff, and intended to file a motion for protective order to limit the search terms or have Plaintiffs pay for the cost of production as it is too large to do in house. A week has passed, and CCSD has not made that motion or otherwise engaged with Plaintiffs about the substantial document discovery that it still owes.

52.     Perhaps more importantly, CCSD represented that it would take a vendor only two weeks to collect the data and run the search terms. This admission demonstrates that CCSD could have easily completed this process months ago – at any point after March 7, 2025 - and produced documents in a timely manner. Instead, CCSD deliberately delayed engaging a vendor until just two weeks before the discovery deadline.

Beyond the incivility, the foregoing makes clear that CCSD waited nearly five months to even begin the process necessary for it to review and produce electronic documents, and thus did not even endeavor to make a sufficient a document production in this case.

Meanwhile, during late August 2025, CCSD promised to produce specifically-identified documents within 24-48 hours of request. On August 28, 2025, Plaintiffs sent an email with five specific requests. CCSD did not respond. *Little Decl. II,* ¶¶ 54-55.

During the September 25, 2025 meet and confer, CCSD said it would produce such documents (with one baseless exception) by September 29, 2025. *Id.*, ¶ 57. It did not do so. Instead, on September 30, 2025, for the very first time after more than a month and several unkept promises to produce the documents, CCSD asked Plaintiffs to identify the requests for production to which the specifically-identified documents were responsive.

7

Plaintiffs promptly did so, yet CCSD still neither produced the documents nor articulated why they are non-responsive. *See Id*., ¶¶ 58-59.

CCSD continued to repeat its outrageous failures to communicate, including with respect to scheduling its 30(b)(6) deposition. As set forth in the *Little Decl. II*:

66. At a meet and confer related to various discovery issues, on September 25, 2025, Ms. Nichols represented that she would be arranging for depositions of the 30(b)(6) witnesses responsive to the August 8, 2025 notice beginning the week of September 29, 2025.

67. On September 30, 2025, because Ms. Nichols once again was not responsive, we served, by email and certified mail, a Supplemental Rule 30(b)(6) deposition notice for October 7, 8, 9, 10, 13, 14, and 15, 2025. Ex. 17 (9.30.2025 email and attached Plaintiffs' Supplemental Notice of FRCP 30(b)(6) Deposition to Clark County School District).

68. In the email, I wrote, "We cannot continue to speculate as to whether we are going forward with depositions so we are attaching a supplemental 30(b)(6) notice for depositions through October 15. If you need to rearrange those depositions for scheduling over the next 15 days we will accommodate you but we expect to take all of these depositions by October 15." Ex. 17 at 2. CCSD did not respond.

69. On Friday, October 3, 2025, at 8:51 a.m. PT, I emailed Ms. Nichols and told her that if we did not hear back from her by 4:00 p.m. PT, we would be confirming with the court reporters that depositions would begin on October 7, 2025, and proceed as scheduled in the 30(b)(6) notice. Ex. 19. CCSD did not respond.

70. Ms. Nichols did not email or call me to say that she did not have the email and notice regarding scheduling the 30(b)(6) witnesses, which would have been the reasonable and courteous response if she really did not have the email. Likewise, Ms. Nichols did not tell me that she did not know why I was seeking to confirm the deposition schedule.

71. The morning of October 3, 2025, after I had sent the email, I telephoned Ms. Nichols. She texted me that she was in a meeting and that she would call me back at 2:00 PT. Ex. 20 at 1. I did not receive the promised return call.

72. At 5:32 p.m. ET/2:32 p.m. PT, I followed up with a text, asking if she was still available to talk and telling her to call me at any time. Ex. 20 at 1. I still did not receive a call or any other communication.

73. The evening of October 3, 2025, at 6 p.m. PT, I sent Ms. Nichols a text, saying that I was disappointed that she did not call me back. I was going to sleep, but ended the text with: "I will be available anytime this weekend to talk. *Bottom line is are your 30(b)(6) witnesses going to appear on the dates I outlined in my email of 9/30 to you*?" Ex. 20 at 2 (emphasis supplied). No response.

8

74.     I called and left a message for Ms. Nichols on Saturday morning, October 4, 2025. Once again, no response.

75.     At no time did CCSD challenge the validity of the supplemental notice scheduling the witnesses identified by CCSD in response to the August 8, 2025 30(b)(6) deposition notice.

76.     As of Sunday, October 5, 2025, we did not know whether or not CCSD would be producing the witnesses noticed for October 7, 2025. Because I could not be in transit the afternoon of October 6, 2025, due to the zoom hearing on the pending discovery motion, I had no choice but to fly out to Las Vegas on October 5, 2025.

77.     CCSD's own actions directly contradict its October 6, 2025 representation to the Court that it did not have the deposition notice. CCSD had already acknowledged and responded to the August 8, 2025 notice by identifying specific witnesses. Ex. 15 at 4. The September 30, 2025 supplemental notice simply provided specific dates for these previously agreed-upon depositions. Furthermore, CCSD has offered no explanation for ignoring multiple emails and texts seeking to confirm these deposition dates.

78.     On October 6, 2025, after the court appearance, Ms. Freeman sent an email requesting that Ms. Nichols confirm whether or not CCSD would be producing witnesses pursuant to the Rule 30(b)(6) deposition notice on October 8, 9, and/or 10. Ex. 21.

79.     This time, presumably chastened by the Court appearance, Ms. Nichols responded by email that she did not believe depositions would take place this week but she would have more information on October 7. Ex. 21.

80.     Ms. Nichols did not contact us on October 7 with more information.

CCSD's intransigence continued even after the October 6 court appearance. CCSD filed its Answer to the First Amended Complaint only after Plaintiffs' filed for default; did not produce additional documents; did not communicate with Plaintiffs about electronic discovery; and did not respond to inquiries regarding deposition scheduling. *Little Decl. II*, ¶ 88.

B.     **CCSD Did Not Contest Most of the Relevant Facts in Plaintiffs' Motion**

The Order describes "CCSD's response [as] less than fulsome." Order, at 2. Indeed, CCSD did not contest the following facts supported by *Little Decl. II*, and the record in this matter, including ECF [No.] 75-1 (*Little Decl. I*). These undisputed facts amply support Plaintiffs' claim that CCSD has obstructed discovery since the inception of this litigation. CCSD did not even mention, much less refute, the following facts.

9

**CCSD produced untimely and insufficient initial disclosures**. CCSD did not produce its initial disclosures in a timely manner, and they were deficient on their face despite the extra time. Further, when asked about the initial disclosures, CCSD misrepresented that it had served those disclosures by regular mail. *Little Decl. II*, at ¶¶ 6-17.

**CCSD's interrogatory responses were insufficient on their face**. CCSD has not responded in full to Interrogatories requiring identification of witnesses. *Little Decl. II*, at ¶ 53.

**CCSD failed to provide specific documents despite promising to do so**. During late August, CCSD told Plaintiffs that, if Plaintiff provided specific requests for documents based on deposition testimony, CCSD would provide them within 24-48 hours after a request. *Id*. at ¶ 54. On August 28, 2025, Plaintiffs requested five specific categories of document; CCSD did not respond. *Id*. at ¶ 55 & Ex. 16 at 2. On September 24, 2025, Plaintiffs followed up in writing. *Id*. at ¶ 56 & Ex. 16 at 1. On September 25, 2025, CCSD promised to produce all of the requested documents (except master calendars) by September 29, 2025. *Id*. at ¶ 57. It did not do so. Instead, on September 30, 2025, CCSD asked Plaintiffs to identify the requests to which the specifically-identified documents were responsive. *Id*. at ¶ 58(e) & Ex. 14 at 2.

On September 30, 2025, Plaintiffs identified the relevant discovery requests. CCSD neither produced the documents nor articulated why they are non-responsive. *Id*. at ¶ 59. Despite repeatedly promising to produce these documents, in response to the motion CCSD offered an after-the-fact excuse for its failure. It claims that "the five categories of documents subsequently sought should have been specific requests." ECF [No.] 128 at 8. This argument flatly contradicted CCSD's prior commitment to produce them, and underscored its refusal to engage meaningfully. CCSD first argues the requests were overbroad and should have been narrowed during the meet-and-confer process. Yet, when Plaintiffs identified specific, narrowed categories of documents, CCSD contends they should have been in the original

demands—despite inviting Plaintiffs to request them and promising production. This contradictory stance renders the meet-and-confer process pointless, replacing it with a "heads CCSD wins, tails Plaintiffs lose" approach.

**CCSD has had Plaintiffs' discovery demands since March 2025, which were formally served in April 2025**. CCSD does not dispute that it possessed the discovery requests since March 7, 2025, which were formally served on April 7, 2025. *Nichols Decl.*, ECF [No.] 128 at p.2 ¶ 4; *Little Decl. II*, at ¶ 30. But CCSD waited almost five months to request, for the first time, on August 1, 2025, six weeks prior to the discovery cut-off, that Plaintiffs provide search terms for electronic discovery. *Little Decl. II*, at ¶ 31; *Nichols Decl.*, ECF [No.] 128 at p.3 ¶¶ 9-11.

**CCSD admits that it did nothing to conduct a proper collection of electronic discovery, including emails, until August 2025**. CCSD implies that it did not realize Plaintiffs sought emails until a meet and confer at the end of July 2025. *Nichols Decl.*, ECF [No.] 128 at 3 ¶¶ 9-10. That position defies credulity. The face of the discovery demands themselves unequivocally seek emails and other electronic discovery. *See Freeman Decl.*, ECF [No.] 129-1, ¶ 4 (describing portions of Plaintiffs' discovery demands explicitly calling for emails and other electronic documents). As such, CCSD knew, as early as March 7, 2025, that Plaintiffs sought production of emails. CCSD's argument, disingenuous though it may be, ended up being an admission that CCSD did nothing to collect and review its emails until August 2025, despite the then-looming September 15, 2025 fact discovery end date.

**CCSD admits that it waited until six weeks before the discovery end date to request search terms**. CCSD confirmed that, although it had the discovery requests since March 7, 2025, CCSD waited until August 1, 2025, almost five months after it received the discovery requests, and only six weeks prior to the discovery cut-off, to request that Plaintiffs provide

search terms for electronic discovery. *Little Decl. II*, at ¶ 31; *Nichols Decl.*, ECF [No.] 128-1, at p.3 ¶¶ 9-11.

**CCSD misrepresented its discovery efforts to Plaintiffs and the Court**. CCSD represented to the Court on September 11, 2025 that it was "currently running those search terms against a limited set of custodians – specifically, the individuals CCSD identified to appear as 30(b)(6) witnesses – as a sample set." ECF [No.] 104 at 4. CCSD conceded this representation was false.

**Two weeks prior to the discovery cut off, CCSD informed Plaintiffs that it was going to file a motion to shift discovery costs, but it never did**. On September 30, 2025, two weeks prior to expiration of the discovery deadline, and almost seven months after being put on notice that Plaintiffs sought production of emails, CCSD indicated that it planned to file a motion to shift the costs for electronic discovery to Plaintiffs. CCSD neither produced the electronic discovery nor filed a motion to shift the costs of discovery prior to the close of discovery. *Little Decl. II,* ¶ 51.

**After representing to the Court that it was not filed due to administrative error, CCSD failed to file an Answer until forcing Plaintiffs to move for default**. On October 6, 2025, prior to one of its attorney's medical issues, counsel for CCSD represented to the Court that *if* it had not filed the Answer, due on October 2, it was because of an administrative error. ECF [No.] 113 at 25. Yet, CCSD did not file its Answer until more than two weeks later, and only after Plaintiffs secured an entry of default on October 21, 2025.

C.    **The Order Should Be Reversed**

As described above, and in *Little Decl. I* and *Little Decl. II*, CCSD has followed a persistent path of missed deadlines, unkept promises, misrepresentations, lack of cooperation and civility, and general failures to participate in discovery in this case. Some of the examples,

12

standing alone, reasonably could be deemed sanctionable. Taken together, CCSD's conduct demonstrates a calculated, intentional effort to delay this case to avoid its ultimate reckoning on the merits, while denying justice to the children whose rights are at stake.

To Plaintiffs' great surprise, despite the overwhelming record of misdeeds, the Order rewards CCSD for its lack of cooperation and failures to participate in discovery, to the great detriment of the proposed class of 40,000 students with disabilities in Clark County and their families. The Order should be reversed to the extent requested in this objection.

## 1. **Standard of Review**

FRCP 72(a) provides that "[a] party may serve and file objections to the order within 14 days after being served with a copy." *See also* Local Rule IB 1-3; LR IB 3-1. This objection therefore is timely filed. Pursuant to FRCP 72(a), "the district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law."

This Court is familiar with the applicable standards:

> When reviewing the order of a magistrate judge, the order should be set aside only if the order is clearly erroneous or contrary to law. Fed. R. Civ. P. 72(a); LR IB 3-1(a); 28 U.S.C. § 636(b)(1)(A); *Laxalt v. McClatchy*, 602 F. Supp. 214, 216 (D. Nev. 1985). A magistrate judge's order is "clearly erroneous" if the court has a "definite and firm conviction that a mistake has been committed." *See United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948). "An order is contrary to law when it fails to apply or misapplies relevant statutes, case law or rules of procedure." *UnitedHealth Grp., Inc. v. United Healthcare, Inc.*, No. 2:14-cv-00224-RCJ, 2014 WL 4635882, at *1 (D. Nev. Sept. 16, 2014) (citation omitted). When reviewing the order, however, the magistrate judge "is afforded broad discretion, which will be overruled only if abused." *Columbia Pictures, Inc. v. Bunnell*, 245 F.R.D. 443, 446 (C.D. Cal. 2007) (citation omitted). The district judge "may not simply substitute its judgment" for that of the magistrate judge. *Grimes v. City and Cnty. of San Francisco*, 951 F.2d 236, 241 (9th Cir. 1991).

*Mwithiga v. Pierce*, 758 F. Supp. 3d 1230, 1246 (D. Nev. 2024) (Navarro, J.), *appeal dismissed*, No. 25-240, 2025 WL 1119677 (9th Cir. Jan. 24, 2025). While the standard of review is somewhat deferential, the Order of the Court below contains threshold "clearly erroneous" determinations, leading to conclusions that were contrary to law and, in full, constitutes a gross abuse of discretion and a manifest injustice significantly prejudicing the proposed class of 40,000 special education students and their families.

### 2.      The Order Is Wrong In All Material Respects; It Is A Combination Of Determinations That Are Clearly Erroneous, Contrary To Law, An Abuse Of Discretion, And Manifestly Unjust

The Order is built on several foundational issues of fact that the Court got wrong. The Order contends, for example, that "Plaintiffs fail to identify the rule that CCSD violated, the rule governing their sanction request related to CCSD's failures to respond to requests for production, or what sanctions they believe to be appropriate to address those failures. Without this information, the Court cannot conduct a sanction, or even a motion to compel, analysis." Order, at 4. Not so. The Court had ready access to everything it needed.

*First*, the Order asserts that "it does not appear from Plaintiffs' motion that they have previously moved to compel CCSD to provide the documents at issue. This information is critical to the Court's analysis because a motion to compel is a prerequisite to the Court considering and imposing sanctions under Rule 37(a)(5) or 37(b)(2)." *Id*. But Plaintiffs moved to compel on June 10, 2025, which the Court granted on July 30, 2025. ECF [No.] 92 (DOCKET ENTRY: "IT IS ORDERED that [ECF 75] Motion to Compel is GRANTED.") The fact that there was a prior motion to compel in this action thus is apparent from the docket in this case (*see, e.g.*, ECF [Nos.] 75, 76, 92), and also from Plaintiffs' reference to the motion to compel in its motion papers on the underlying motion. Indeed, Plaintiffs' specifically refer to "the July 30, 2025 hearing on Plaintiffs' initial motion to compel, [during which] counsel for CCSD

14

unequivocally represented to this Court that CCSD would produce the requested discovery." *Pl. Motion*, at 14. *See also Little Decl. II*, at ¶ 26 ("Because the meet and confer was not successful, on June 10, 2025, Plaintiffs filed a Motion to Compel and Motion for Sanctions related to CCSD's conduct. ECF No. 75, 76."). CCSD also referenced the motion to compel. *See* ECF [No.] 128 at p.2, ¶ 6. The court committed clear error in determining that it could not perform a sanctions analysis.

*Second*, the Order asserts that "even if the Court construed Plaintiffs' motion as one to compel the documents at issue (Plaintiffs request this relief in the alternative), Plaintiffs do not provide the Court sufficient information to analyze their request. Plaintiffs do not 'set forth in full the text of the discovery originally sought and any response to it,' as required by Local Rule 26-6. So, the Court cannot determine if CCSD failed to respond to an entire set of requests for production, failed to respond to individual requests, or provided incomplete or evasive responses." Order, at 5. But Plaintiffs' motion papers cite to the discovery demands submitted with the earlier motion to compel, assert how directly relevant they are to the allegations in the First Amended Complaint, and include CCSD's deficient responses. For example, Plaintiffs argued, "Information is discoverable if it is (1) relevant, (2) proportional, and (3) not privileged. Plaintiffs easily make this showing, as their request for documents is drawn directly from the First Amended Complaint in this case. Compare ECF No. 30 ¶ 43 to ECF No. 75-1 at pp. 50-51 (internal citation omitted)." *Pl. Motion,* at 12. ECF [No.] 75-1 includes Plaintiffs' discovery demands and CCSD's responses thereto, and they were available to the Court below. Indeed, the Memorandum of Points and Authorities filed on June 10, 2025 identifies precisely the information that Plaintiffs were seeking. *See* ECF [No.] 75 at pp.8-14 (identifying insufficient interrogatory responses); ECF [No.] 75 at pp. 14-21 (identifying inadequate responses to requests for production). On July 30, 2025, the Court granted the motion to compel. ECF [No.]

15

92. Plaintiffs returned to the court to seek sanctions after CCSD failed to provide the discovery responses identified in a prior motion to compel, ECF [No.] 75, that the court granted. It was clear error to conclude that the court did not know what deficiencies Plaintiffs had asserted.

Further, putting aside the fact that the Court did have access to the demands and responses at issue, the record on the underlying motion does not even support the conclusion that the Court below needed to review the demands and responses. Quite simply, the record demonstrates, without a specific request-by-request analysis, that CCSD did not even collect and review its electronic discovery, much less purport to make a complete production. CCSD never contested this fact. Despite these indisputable facts and CCSD's indisputable failures, the Order declines to address CCSD's failures to participate, either by sanctions or by compelling CCSD to comply with its discovery obligations.

To the extent that the Court below treats the references to docket entries in this very case as not part of the record on the motion, such a form-over-substance argument was a grave dereliction of the court's duty to the 40,000 special education students and their families who make up the proposed class of plaintiffs in this case, and is manifestly unjust. *Armorock, LLC v. Arthur J. Gallagher & Co.*, No. 2:25-CV-00553-GMN-EJY, 2026 WL 701556, at *2 (D. Nev. Mar. 11, 2026) (Navarro, J.) ("Further, a 'court may take judicial notice of the filings on the docket in a case before that court.'") (citations omitted). And, here, Plaintiffs' moving papers make the overwhelming showing, not in any way refuted by CCSD, that CCSD did not even conduct a proper collection, review and production of electronic documents, and that CCSD does not purport to have done so, thus eliminating any need to review the discovery demands on a request-by-request basis. CCSD admits that it did not do what was required.

The motion, to be clear, is not simply that CCSD did not respond appropriately to this or that specific request, or withheld a specific sub-category of documents arguably responsive

16

to a specific request, but that ***CCSD did not even undertake the collection and review that would be necessary to respond to the requests***. CCSD  chose not to do so, and chose not to do so after a motion to compel was *granted*. The Order nonetheless rewards CCSD for its failure to participate and other misconduct.

*Third*, the Order asserts that "Plaintiffs refer to broad categories of discovery conduct for which they believe CCSD should be sanctioned. But Plaintiffs do not point out which specific rules CCSD has violated, which specific rules or sources provide the Court's authority to sanction CCSD for its violations, or the specific sanctions Plaintiffs seek to address each asserted violation." Order, at 1. *See also* Order, at 2 ("As explained in more detail below, Plaintiffs' failure to identify the precise rule that CCSD violated, the source of the Court's authority to sanction CCSD for that precise violation, and the precise sanction Plaintiffs seek to remedy each violation is fatal to the Court's ability to analyze their motion.") But that, too, simply is not correct.

The motion very clearly seeks sanctions for CCSD's conduct of discovery in full, but most particularly its refusal and failure to produce duly noticed deposition witnesses, or to make anything even approximating a complete document production. CCSD in fact does not dispute that it did not collect, review or search its emails for responsive documents. *A fortiori*, they failed to meet their discovery obligations.

The failure to produce properly noticed deposition witnesses, pursuant to FRCP 30, and the indisputable failure to produce documents in response to document demands, pursuant to FRCP 26, are remediable under FRCP 37 and the Court's inherent powers, both of which Plaintiffs specifically cited in their moving papers. *See Pl. Motion*, at 15-18 ("This Court has the authority to issue discovery sanctions under Rule 37 and its inherent authority.") (citing

cases). It therefore is difficult to surmise how the Court below concluded that Plaintiffs did not direct the Court to the source of its authority.

And, the motion very clearly sought a severe discovery sanction—"prohibiting CCSD from offering defenses to liability in this case, granting an adverse interest against CCSD for failing to produce documents, and/or awarding a lesser appropriate sanction in the Court's discretion" (*Pl. Motion* at 4)—for CCSD's failures and refusals to participate in discovery by failing to produce documents and to produce deposition witnesses. The Court below therefore was not accurate in finding that Plaintiffs did not specify the sanctions they seek.

Finally, in the alternative to an order granting sanctions, Plaintiffs requested that CCSD "be directed to make a full and complete document production within fifteen days of the Court ordering such relief. Plaintiffs then should be provided thirty days to review the production, followed by a month to complete depositions, including recalling witnesses as appropriate." (*Pl. Motion* at 4). That relief, even if the Court below were to have adjusted the deadlines, is the absolute bare minimum that was required under the circumstances here.[2]

In sum, Plaintiffs (1) specifically referenced the discovery demands and their responses; (2) described the sanctions they sought for CCSD's indisputable failure to participate in discovery; (3) directed the Court to authority for such sanctions, including FRCP 37 and the

---

[2] Plaintiffs argued that CCSD's failure to produce discovery in its exclusive control should be treated like spoliation. The Order states: "even if the Court considered CCSD to have spoliated the responsive documents, as Plaintiffs ask it to do, Plaintiffs do not provide sufficient information for the Court to conduct a spoliation analysis." Order, at 4. That is wrong for reasons previously stated—specifically, that CCSD indisputably did not conduct a proper collection and review of electronic documents, and thus necessarily did not make a complete production in this case.

But Plaintiffs went on to argue: "even if the Court concludes that CCSD's conduct does not technically meet the spoliation standard, the result should be the same. This Court has the authority to issue discovery sanctions under Rule 37 and its inherent authority." *Pl. Motion*, at 17 (citations omitted). The court, though, chose not to address the merits.

18

Court's inherent authority to sanction discovery abuses, and related cases; and (4) demonstrated that CCSD failed and refused to review and produce documents, to provide sufficient interrogatory responses, and to produce witnesses for depositions, even after the Court granted a motion to compel. The record is very clear and beyond serious dispute: CCSD failed to perform its discovery obligations in the broadest sense—*e.g.*, failing to produce noticed deposition witnesses, and failing to conduct even a collection of electronic documents for review and production—yet the Order allows it.[3] The Order should be reversed, and the Court should sanction CCSD with an adverse inference, or compel CCSD to do a proper collection, review and production of documents and to produce witnesses for depositions.

### 3.    The Court Should Enter An Order Either Sanctioning CCSD Or Directing It To Provide Appropriate Responses To Plaintiffs' Discovery Demands

A party seeking discovery may move for an order compelling an answer or production if the adverse party fails to answer an interrogatory submitted under Rule 33 or a party fails to produce documents as requested under Rule 34. Fed. R. Civ. P. 37(a)(3)(B)(iii), (iv). The movant must make a threshold showing that it is seeking information within the scope of discovery under Rule 26. *Peeler v. State Farm Mut. Ins. Co.*, No. 2:17-cv-07235-JAD-DJA, 2022 U.S. Dist. LEXIS 5911, at *4-5 (D. Nev. Jan. 12, 2022). "To be discoverable . . ., information must be (1) relevant to any party's claim or defense; and (2) proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1)." *Id*. at *5.

Relevance is a "relatively low threshold." *Tsatas v. Airborne Wireless Network, Inc.*, No. 2022 U.S. Dist. LEXIS 3396, at *5 (D. Nev. Jan. 7, 2022) (quoting *Nat'l Rifle Ass'n v.*

---

[3] The Order, however, denied relief related to CCSD's late service of the Initial Disclosures and regarding issues related to the deposition of Mr. Ebihara, but Plaintiffs did not seek specific relief related to those issues. Rather, those issues, like CCSD's untimely filing of its answer to the First Amended Complaint and other issues presented, set forth a wide-ranging record of CCSD's failures to follow the rules virtually every step of the way in this case.

*Cuomo*, 332 F.R.D. 420, 428)). "It merely requires 'the possibility of a nexus between the information sought and the claims and defenses of a party.' That is, it is simply a tool used to ensure that before the gates to discovery are open, a minimum showing has been made." *Id*. (quoting *Nat'l Rifle Ass'n*, 332 F.R.D. at 428). Information is discoverable if it is (1) relevant, (2) proportional, and (3) not privileged. *Id*. at *4. Plaintiffs easily make this showing, as their request for documents is drawn directly from the First Amended Complaint in this case. Compare ECF [No.] 30 ¶ 43 to ECF [No.] 75-1 at pp. 50-51.

"Failure to cooperate with efforts to obtain clarification or adequate responses to discovery requests may result in sanctions, including, but not limited to . . . imposing an adverse inference, [and] limiting [the party's] ability to introduce evidence in the future." *Amerson v. Las Vegas Coll.*, 2025 U.S. Dist. LEXIS 119395, at *3 (D. Nev. June 23, 2025). Further, when compliance with discovery necessitates a motion to compel and the non-moving party has had the opportunity to respond, "the court must . . . require the party . . . whose conduct necessitated the motion . . . to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." *Id*. at *3-4 (quoting Fed. R. Civ. P. 37(a)(5)(A)).

CCSD failed to respond to requests for relevant information, necessitating the motion. From the very inception of discovery, CCSD has engaged in gamesmanship, flouted its discovery obligations, and ignored Plaintiffs when they attempted to secure cooperation without judicial intervention. *See Little Decl. I,* ECF [No.] 75-1, ¶¶ 4 – 21; *Little Decl. II*, ¶¶ 5-59. Plaintiffs demonstrated an extreme willingness to work with CCSD to address the scope of the requests and any unusual burden to ensure the discovery is proportional.

CCSD, however, refused to engage with Plaintiffs on the issue until the very last minute, and even then only in ways that did little to nothing to advance the ball. At the July 30, 2025 hearing on Plaintiffs' initial motion to compel, counsel for CCSD unequivocally represented to

this Court that CCSD would produce the requested discovery. Plaintiffs relied on those representations in good faith, refraining from seeking further Court intervention, withdrawing their request for sanctions, and instead pursuing informal resolution. Over the ensuing weeks, Plaintiffs made repeated efforts to secure compliance without involving the Court. CCSD, in turn, alternated between assuring Plaintiffs that it would cooperate, and descending into radio silence for weeks at a time.

Plaintiffs exercised extraordinary patience throughout this process. In an effort to avoid burdening the Court, and despite Plaintiffs' desire to get to the merits of this case as soon as possible, Plaintiffs agreed to jointly seek an extension of the discovery deadline to mitigate the prejudice caused by CCSD's repeated delays and failures to comply with its discovery obligations. CCSD, however, did not reciprocate, and did not make any progress toward meeting its obligations after the stipulated extension. In fact, CCSD did not produce a single additional document after the parties stipulated to extend the discovery deadline.

Instead, after completing depositions of the Named Plaintiffs, CCSD went entirely silent, abandoning its commitments and ceasing all meaningful participation in discovery until Plaintiffs formally requested a meet and confer. And then, after the meet and confer, CCSD made and rescinded commitments, and ultimately did little to nothing to move closer to producing documents. CCSD's conduct reflected not mere oversight or neglect, but a deliberate disregard for the rules and the serious, time-sensitive issues presented by Plaintiffs in this action. CCSD's willful, bad-faith conduct is tantamount to spoliation because time is of the essence in this case. CCSD has chosen not to participate appropriately in discovery, either through direct marching orders to counsel or by failing and refusing to provide the resources necessary to litigate a case of this magnitude and importance. CCSD's prolonged delay and

21

unjustified refusal to produce critical documents and complete discovery obstructed the judicial process and inflicted lasting harm on the very children the law is designed to protect.

This case is not one that seeks damages in which discovery delays are frustrating, but ultimately more inconvenient than substantively significant. The delay here is not academic and its impact is not hypothetical. CCSD's dilatory actions have devastating real-world consequences for vulnerable children entitled to special education services. For many, the mere passage of time forecloses meaningful educational opportunities, resulting in irreparable harm. The damage cannot be undone by belated compliance or future remedial efforts.

Federal Rule of Civil Procedure 37 authorizes courts to impose sanctions when a party fails to meet its discovery obligations. These sanctions include adverse inference instructions, preclusion of evidence, striking pleadings or defenses, and even default judgment. *See Amerson v. Las Vegas Coll.*, 2025 U.S. Dist. LEXIS 119395, at \*3 (D. Nev. June 23, 2025); *Scalia v. City of Kern*, 658 F. Supp. 3d 809, 813 (E.D. Cal. 2023). Likewise, federal courts have inherent authority "to levy sanctions in response to abusive litigation practices." *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958 (9th Cir. 2006); Chambers v. Nasco, Inc., 501 U.S. 32, 44-45 (1991).

"Dismissal is an available sanction when 'a party has engaged deliberately in deceptive practices that undermine the integrity of judicial proceedings' because 'courts have the inherent power to dismiss an action when a party has willfully deceived the court and engaged in conduct utterly inconsistent with the orderly administration of justice.'" *Leon*, 464 F.3d at 958 (quoting *Anheuser-Busch, Inc. v. Natural Beverage Distribs.*, 69 F.3d 337, 348 (9th Cir. 1995)). A court should impose terminating sanctions only in extreme circumstances, "where the violation is 'due to the willfulness, bad faith, or fault of the party.'" *In re Exxon Valdez*, 102 F.3d 429, 432 (9th Cir 1996).

22

Further, when a party fails to appear for a properly noticed deposition, the court may issue an order compelling attendance. Rule 37(d)(1)(A)(i) specifically addresses situations where "a party or a party's officer, director, or managing agent—or a person designated under Rule 30(b)(6) or 31(a)(4)—fails to appear for a duly noticed deposition. The Ninth Circuit has confirmed that "discovery sanction rule encompasses an order to attend a deposition." *Sali v. Corona Regional Medical Center*, 884 F.3d 1218 (9th Cir. 2018). *See also* FRCP 35(a)(1) ("The court has the same authority to order a party to produce for examination a person who is in its custody or under its legal control.").

CCSD's conduct has been willful, not inadvertent. Its actions have impacted the public's interest in expeditious litigation, particularly in this case, involving potentially life-changing educational deprivation of school children. CCSD's conduct has also interfered with the court's management of its docket.

The prejudice to the Plaintiffs is, in many cases, irreparable harm. Although public policy favoring disposition of cases on their merits typically weighs against dismissal or striking of defenses, given CCSD's "efforts to stymie the plaintiffs' ability to have this case decided on the merits, this factor weighs only slightly in [CCSD's] favor." *Id*. at *40.

Accordingly, as in *Zeiter*, Plaintiffs seek an order precluding CCSD from disputing that it has engaged in systemic violations of IDEA and Section 504. Trial in this case should be limited to the type of relief necessary to remedy these systemic violations.

Even if the Court concludes that CCSD's conduct does not technically meet the spoliation standard, the result should be the same. This Court has the authority to issue discovery sanctions under Rule 37 and its inherent authority. *See Webster*, 386 F. Supp. 3d at 1369. "There is no absolute limit to the sanctions available to the court, but Rule 37 sets forth a non-exhaustive list of potential remedies, including: excluding evidence, issuing an adverse

23

inference instruction, instructing the jury of a party's misconduct, preventing a party from presenting a particular claim or defense, awarding partial dismissal, entering default judgment, and awarding reasonable fees." *Id. See also Forsythe v. Brown*, 281 F.R.D. 577, 586 (D. Nev. 2012) ("The court is not limited to imposing the sanctions enumerated Rule 37(b)(2)(A) and may make any order that is 'just.'") (citing *Valley Engineers, Inc. v. Electric Engineering Co.*, 158 F.3d 1051, 1056 (9th Cir.1998).

CCSD's conduct here plainly warrants a severe discovery sanction. Accordingly, in the event that the Court does not enter an order prohibiting CCSD from offering defenses to liability, the Court should order an adverse inference that CCSD has failed to produce discovery because such discovery would harm its defenses.

Finally, in the alternative—and Plaintiffs believe this remedy rewards CCSD's misconduct at Plaintiffs' expense—the Court should direct CCSD to make a full and complete discovery production within fifteen days (or such time as the Court deems appropriate). Plaintiffs should be provided at least thirty days to review the production, and an additional thirty days to complete depositions. Plaintiffs respectfully submit that the Court should make clear that, should CCSD miss the deadline to make a complete production, or fail to cooperate in the scheduling depositions, the Court shall enter an Order prohibiting CCSD from offering a defense to liability or finding an adverse inference that CCSD failed to do so because such discovery would have proven Plaintiffs' claims and undermined CCSD's defenses.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs request that the Court grant the relief requested herein.

Dated: May 1, 2026

Respectfully submitted,

/s/ Catherine Merino Reisman
Catherine Merino Reisman*
PA ID No. 57473
NJ ID No. 035792000
NY ID No. 5640172
Judith A. Gran*
PA ID No. 41034
REISMAN GRAN ZUBA LLP
923 Haddonfield Road, Suite 300
Cherry Hill, New Jersey 08002
856.354.0021
catherine@rgz.law
judith@rgz.law

Lori C. Rogich
Nevada State Bar No. 12272
ROGICH LAW FIRM, PLLC
6070 Eastern Avenue, Suite 270
Las Vegas, Nevada 89119
702.279.2491
lori@rogichlawfirm.com

Courtney McCandless
Nevada State Bar No. 13722
Simmons Freeman LLC
3625 S. Town Center Drive, Suite 150
Law Vegas, Nevada 89135
702.846.4689
cmccandless@nvtrustlawyers.com

Hillary D. Freeman*
NJ ID No. 002362006
PA ID No. 200109
FREEMAN LAW OFFICES, LLC
100 Canal Pointe Blvd, Suite 121
Princeton, New Jersey 08540
609.454.5609
hillary@freemanlawoffices.com

Jeffrey I. Wasserman*
NJ ID No. 037051999
NY ID No. 3046448
Gregory G. Little*
NY ID No. 4288544
WASSERMAN LITTLE LLC
300 Witherspoon Street, Suite 201
Princeton, New Jersey 08542
973.486.4801
jwasserman@wassermanlittle.com
glittle@wassermanlittle.com

*Admitted pro hac vice

Attorneys for Plaintiffs

25

**CERTIFICATE OF SERVICE**

I, Catherine Merino Reisman, certify that I served all counsel of record with this Objection to Magistrate's Ruling by causing it to be sent via the ECF system on the date indicated below.

Dated: May 1, 2026                                    */s/Catherine Merino Reisman*
                                                      Catherine Merino Reisman